THE PEOPLE OF THE STATE OF NEW YORK ex rel. GUSTAV J. WERNER, Respondent, *v.* WILLIAM A. PRENDERGAST, as Comptroller of the City of New York, et al., Appellants.

**New York (city of)** — board of elections thereof a local, not a state, board — salaries of employees of such board must be certified by municipal civil service commission.

The board of elections of the city of New York, appointed by the board of aldermen (L. 1911, ch. 649), is, so far as regards the necessity for certification of the salary of an employee by the municipal

civil service commission, a local rather than a state board; hence the salary of an employee must be certified and approved by that board, and certification by the state civil service commission is not sufficient.

*People ex rel. Werner* v. *Prendergast,* 152 App. Div. 104, reversed.

(Argued October 3, 1912; decided November 19, 1912.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 11, 1912, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendant comptroller to pay the salary of the relator as an employee of the board of elections of the city of New York, without the certification of his name on the payrolls by the municipal civil service commission.

The facts, so far as material, are stated in the opinion.

*Archibald R. Watson, Corporation Counsel* (*Terence Farley* and *Elliot S. Benedict* of counsel), for appellants. The Public Officers Law very conclusively establishes that the election commissioners of the city of New York are not state officers. (Cons. Laws, ch. 47, § 2; *Matter of Reynolds,* 202 N. Y. 430; *Matter of Whiting,* 2 Barb. 513; *Matter of Carpenter,* 7 Barb. 30; *Wilcox* v. *McClellan,* 185 N. Y. 9.) As the courts have indicated, the best tests of what constitutes a city office are (1) by whom is the incumbent appointed, and (2) by whom is his salary paid ? (*People ex rel. Sears* v. *Tobey,* 8 App. Div. 469; 153 N. Y. 381; *People ex rel. Bush* v. *Houghton,* 182 N. Y. 301; *Slavin* v. *McGuire,* 205 N. Y. 84.) Up to the time of the institution of the present proceedings, the employees of the board of elections were always classified as being in the civil service of the city of New York. (*Grimmer* v. *Tenement House Dept.,* 205 N. Y. 549.)

*Robert P. Beyer* and *Julius H. Seymour* for respondent. The employees of the board of elections are in the

state service. (*People ex rel. Bard* v. *Nixon*, 158 N. Y.
221; *Sun Pub. Assn.* v. *Mayor, etc.,* 8 App. Div. 230;
152 N. Y. 257; *People ex rel. Ryan* v. *Wheeler*, 41 Hun,
287; 103 N. Y. 657; *People ex rel. Sears* v. *Tobey*, 153
N. Y. 385; *People ex rel. Taylor* v. *Dunlap*, 66 N. Y.
162; *Maxmilian* v. *Mayor, etc.,* 62 N. Y. 160; *Ridinour*
v. *Bd. of Education*, 15 Misc. Rep. 418; *Matter of Kean,*
v. *Gaynor*, 144 App. Div. 196; *Matter of Reynolds*, 202
N. Y. 430; *Sanders* v. *State*, 182 N. Y. 400.)

HISCOCK, J. The relator was appointed a computator
by the board of elections of the city of New York. The
salary claimed to have been earned by him as such was
duly certified and approved by the state civil service com-
mission and was not so approved by the municipal civil
service commission of said city. Because of the latter
fact the appellant comptroller has refused to pay said
salary, and thereby the question has been raised whether
the board of elections which employed respondent is in the
state service or municipal service. If the former be the
case the certification and approval of relator's salary was
sufficient, and the order requiring payment should be
affirmed. If, on the other hand, the latter be the case,
the approval was not sufficient and the order should be
reversed.

By the Greater New York charter (Laws of 1897, chap.
378) the duties theretofore imposed within the territory
then incorporated in said city upon boards of election
or upon police commissioners were transferred to and
imposed upon a general bureau of elections to be organ-
ized and appointed within the police department created
by the new charter, and which bureau was to be super-
vised and controlled by the police board. Without going
into the details of the statute there seems to be no question
that the members and employees of this bureau discharg-
ing the same class of duties as those now discharged by
the board of elections were in the municipal rather than

the state service for the purposes of any such question as is now before us.

In 1901 chapter 95, amending the Election Law, in effect provided for the abolition in the city of New York of the said bureau of elections, and provided for the appointment by the mayor of four persons who were to be known as commissioners of election, and who were to discharge the duties theretofore imposed on said bureau. By chapter 649, Laws of 1911, it was provided that these latter officials should be appointed by the board of aldermen rather than by the mayor.

In determining whether these commissioners and their employees are in the "service of the state" or of the city under the controlling provisions of the Civil Service Act there are considerations which fairly may be marshalled in favor of either solution of the question if treated as an original and isolated one.

The appointments are made under a general statute relating to the entire state, and the officials are not only charged with duties concerning municipal elections but also concerning general elections which directly affect and interest the people of the entire state, and to this extent it might be said that they are in the service of the state.

On the other hand, they are undoubtedly local rather than state officers under the definition of the Public Officers Law (Cons. Laws, ch. 47), which (§ 2), after enumerating certain officials, not involved here, in general terms, defines as a state officer one who is "appointed by one or more state officers, or by the legislature, and authorized to exercise his official functions throughout the entire state, or without limitation to any political subdivision of the state," and defines as a local officer "Every other officer who is elected by the electors of a portion only of the state, every officer of a political subdivision or municipal corporation of the state, and every officer limited in the execution of his official functions to a portion only of the state."

In addition to being appointed by the local authorities, these commissioners must be residents of the municipality, the exercise of their authority is confined within its limits and their salaries and expenses are a municipal charge.

These facts strongly support the appellant's contention that the positions are within the municipal service rather than that of the state.

Under these circumstances, if we should regard the question as susceptible of a contrary decision, it seems better as a matter of policy to apply considerations of analogy and to hold that for the purposes of the question before us this board like other similar ones is a local rather than a state board.

The police department and the departments of education and health in any city are engaged in the discharge of duties which very vitally affect the general public, and yet it would be opposed to widespread and well-settled opinion to hold that the members of such departments are state officials in the sense of being engaged in its service. This subject was considered by Judge GRAY in *People ex rel. Bush* v. *Houghton* (182 N. Y. 301) in the case of a member of the board of health of the city of Oswego who was to be appointed under the provisions of the Public Health Law. In discussing the question whether such an official was a city officer under section 2, article 10 of the Constitution, he said (page 305): "It would seem that the provision for a local board of health in a city was sufficiently explicit as to the municipal character of the office; but it is argued, in substance that, because the common council has not the power to control the members of the board in the discharge of their duties, and because those duties do not relate to the exercise of corporate powers, they are not city officers. This argument is sought to be reinforced by the proposition that the duties of such officers are public in their nature and that they are not servants of the municipal corporation, but of the general

public. I do not consider that this argument is quite sound. The members of the board of health might well be public officers, in the sense that their duties were rendered to the public under a general law of the state, and yet they could be city officers within the meaning of the Constitution. I think that the question does not turn so much upon whether the officers are the servants, or agents, of the city, as upon whether their offices were created for the city, unconnected with any other territory. The doctrine of the case of *People ex rel. Haughton* v. *Andrews* (104 N. Y. 570) and, as well, that of *People ex rel. Wood* v. *Draper* (15 ib. 532, 539) may be, appropriately, referred to. They are subserving the general public interests in promoting and maintaining sanitary conditions in the locality; but they, equally, execute a corporate purpose of the municipal government; which, if it is not to be implied, is actually made a part of its charter by the laws. They are to be appointed under the statute, primarily, by the governing municipal authorities and the performance of their duties is confined territorially to the city. It seems to me that the situation was such as the People intended to be met, when establishing in the fundamental law of the state the principle of 'home rule' for its political subdivisions. The appointment of the complainants by the county judge of the county was, of course, not an appointment by a municipal authority and it cannot be justified, unless the appointees are to be regarded as public officers, whose offices constitute no part of the city government. That they can be so viewed and that their appointment could validly be shifted from the mayor and common council of the city, in the event of unfilled vacancies in the board, upon a county officer, I do not believe."

While perhaps the office of an election commissioner may be distinguished in some respects from that of a police commissioner or a member of the health or education departments, we think that this differentiation would

be so technical and narrow that its recognition in the end would lead to confusion rather than serve any good purpose.

Such cases as those of *Maxmilian* v. *Mayor, etc., of N. Y.* (62 N. Y. 160) and *Matter of Reynolds* (202 N. Y. 430), cited by the respondent to sustain his contention, are not authorities on the present question.   The courts were there discussing the liability of a municipality for acts of certain officials on the theory of principal and agent, and but recognized the well-settled rule that where a municipal corporation is required to elect or appoint an officer to perform a public duty in which it has no private interest and from which it derives no special benefit or advantage, it will not be held liable and punished for the improper acts of such an official on the ground of agency.   That is quite a different question than the present one.   On the other hand a legitimate and pertinent argument in favor of the appellant's contention herein is the fact appearing in the record that for years the position occupied by the relator under the present and preceding analogous statutes has been treated as one in the municipal rather than the state service.   As we have had occasion recently to say where such facts were not made to appear, " the practical construction of a statute by those for whom the law was enacted, or by public officers whose duty it is to enforce it, acquiesced in by all for a long period of time, is of great importance in its interpretation in a case of serious ambiguity." (*Grimmer* v. *Tenement House Department of N. Y.*, 205 N. Y. 549, 550.)

The orders appealed from should be reversed and the application denied, with costs in all courts and ten dollars costs of motion.

CULLEN, Ch. J., HAIGHT, VANN, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur.

Orders reversed, etc.