STEPHEN R. CLEVELAND, Individually and as Commissioner of the Board of Waterworks of the City of Watertown et al., Respondents, *v.* CITY OF WATERTOWN et al., Appellants.

**Constitutional law — the statute (L. 1914, ch. 444) " authorizing a city of the second or third class to adopt a simplified form of government " is not invalid as violating the State Constitution (Art. 3, § 1; art. 12, §§ 1 and 2).**

1. An act of the legislature cannot be judicially declared to be unconstitutional as beyond the power of the legislature to enact, unless one be able to point specifically to some provision of the Constitution with which it is in conflict.

## 160 CLEVELAND v. CITY OF WATERTOWN.

2. While the legislature may not delegate the power to make a charter for a city or a village, it may itself do that and then permit the electors to determine whether they will adopt it or not, and if the same be adopted it becomes the charter with the same force and effect as if the legislature had created it by an act for that specific purpose.

3. The statute (L. 1914, ch. 444) authorizing a city of the second or third class to adopt a simplified form of government does not violate any provision of either the State or the Federal Constitution. (State Const. art. 3, § 1; art. 12, §§ 1 and 2.) All that the act does, or attempts to do, is to permit any city of the second or third class, if a majority of the electors of such city so determine, to adopt any one of the forms of government set forth in the act and thereby change its present form of government for that of the form chosen, and then by ordinance to transfer and distribute the powers which the city officially now has to and among the officials of the new government necessary for the proper management of the city's affairs. It is in legal effect a new charter which the city does not make, but which it accepts in place of the one it now has, and the only powers delegated are those relating to self-government which the legislature can grant if it sees fit to do so.

4. The statute is not invalid because it delegates power to regulate duties, not strictly municipal, but rather those which involve the performance of state functions, such as those relating to assessments, public safety, health, charity and plumbers' licenses. While the exercise of the power relating to the subjects named does, in a certain sense involve state functions, the powers delegated are not those committed by the Constitution solely to the legislature but such as it may commit to a locality in so far as its government is concerned.

*Cleveland* v. *City of Watertown*, 179 App. Div. 954, reversed.

(Argued November 19, 1917; decided December 21, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 11, 1917, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Harold ,L. Hooker* for appellants. The act does not illegally delegate legislative powers. (2 Dillon on Mun. Corp. [5th ed.] § 570; *Mills* v. *Sweeney,* 219 N. Y. 213; *Aldinger* v. *Pugh,* 57 Hun, 181; *Gibbs* v. *Luther,* 81 Misc. Rep. 611; 158 App. Div. 951; L. 1913, ch. 247; *Stanton* v. *Board of Suprs.,* 191 N. Y. 428; *Clarke* v. *City of Rochester,* 28 N. Y. 605; *People* v. *Draper,* 15 N. Y. 532; *Bank of Chenango* v. *Brown,* 26 N. Y. 467; *People ex rel. McLean* v. *Flagg,* 46 N. Y. 401; *Lawton* v. *Steele,* 119 N. Y. 226; *People* v. *La Combe,* 99 N. Y. 43.)

*Winfred T. Denison* and *Laurence Arnold Tanzer* for Municipal Government Association of New York State. The courts below erred in holding the charter to have violated article 3, section 1, and article 12, section 1, of the Constitution by permitting local control over the local administration of assessments, public safety, health, charity and the licensing of plumbers. (*People* v. *Morris,* 13 Wend. 325; *People ex rel. Presmeyer* v. *Com. of Police,* 59 N. Y. 92; *Matter of Zborowski,* 68 N. Y. 88; *Van Ingen* v. *Hudson Realty Co.,* 106 App. Div. 444; *Gibbs* v. *Luther,* 158 App. Div. 951; 81 Misc. Rep. 611; *City of Geneva* v. *Fenwick,* 159 App. Div. 621; *Peace* v. *McAdoo,* 110 App. Div. 13; *People* v. *Kerr,* 27 N. Y. 188; *Darlington* v. *Mayor, etc.,* 31 N. Y. 164; *People ex rel. City of Rochester* v. *Briggs,* 50 N. Y. 553.) The court below erred in applying the doctrine of *Barto* v. *Himrod* to the present situation. (*People ex rel. Unger* v. *Kennedy,* 207 N. Y. 548; *Hanover Bank* v. *Moyses,* 186 U. S. 181; *Clark Distilling Co.* v. *Western Maryland R. Co.,* 242 U. S. 311; *Presby. Church* v. *Mayor, etc.,* 5 Cow. 538; *Crayton* v. *Larabee,* 220 N. Y. 493.) The court below erred in holding that the legislature violated article 3, section 1, and article 12, section 1, of the Constitution by allowing the city to determine the number of its

11

officers and employees and their powers and duties.
(*People ex rel. Dunn* v. *Ham*, 166 N. Y. 477; *Mills* v.
*Sweeney*, 219 N. Y. 213; *Hellyer* v. *Prendergast*, 176 App.
Div. 383; *Matter of City of New York*, 221 N. Y. 127;
*People ex rel., City of Rochester* v. *Briggs*, 50 N. Y. 553;
*Townsend* v. *Mayor, etc.*, 16 Hun, 362; *People* v. *Conover*,
17 N. Y. 64; *Sullivan* v. *Mayor*, 53 N. Y. 652; *Costello* v.
*Mayor*, 63 N. Y. 48; *People* v. *Sing Sing*, 180 N. Y. 527;
54 App. Div. 555; *People* v. *Ahearn*, 193 N. Y. 441.)
An act of the legislature will not be declared uncon-
stitutional unless it clearly violates some provision of
the Constitution; and every presumption must be
indulged against such a construction of the act as would
invalidate it. This is especially true where the results
of invalidation would be so serious as in this case.
(*People* v. *Draper*, 15 N. Y. 532; *Metropolitan Board
of Excise* v. *Barrie*, 34 N. Y. 657; *Waterloo Woolen Mfg.
Co.* v. *Shanahan*, 128 N. Y. 345; *Koch* v. *Mayor*, 152
N. Y. 72; *People ex rel. Simon* v. *Bradley*, 207 N. Y. 592;
*Willis* v. *City of Rochester*, 219 N. Y. 427; *Clarke* v.
*City of Rochester*, 28 N. Y. 605; *Tanza* v. *S. Coal Co.*,
220 N. Y. 259; *Dollar Co.* v. *Canadian C. & F. Co.*, 220
N. Y. 270.)

*George H. Cobb* for respondent. The law in question,
chapter 444 of the Laws of 1914, is unconstitutional.
It violates section 1 of article 3 of the Constitution of the
state of New York. (*People ex rel. Broderick* v. *Morton*,
156 N. Y. 136; *Wright* v. *Hart*, 182 N. Y. 330; Cooley on
Const. Lim. § 163; Locke on Civil Govt. § 142; *Barto*
v. *Himrod*, 8 N. Y. 483; *People ex rel. Percival* v. *Cram*,
164 N. Y. 166; *People ex rel. Devery* v. *Coler*, 173 N. Y.
103; *Stanton* v. *Board of Supervisors*, 191 N. Y. 428;
*People* v. *Klinck Packing Co.*, 214 N. Y. 121; *State* v.
*Great Northern Railway Co.*, 111 N. W. Rep. 289; *Vil. of
Saratoga Springs* v. *Saratoga G., E. L. & P. Co.*, 191 N. Y.

123; *Wyman* v. *Southard,* 10 Wheat. 1.) The act is unconstitutional in that the legislature has failed to pass a statute complete in itself. (*Barto* v. *Himrod,* 8 N. Y. 483; *People ex rel. Unger* v. *Kennedy,* 207 N. Y. 533; *People* v. *Long Island R. R. Co.,* 134 N. Y. 508; *People* v. *Fire Association,* 92 N. Y. 317; *Dowling* v. *Lancaster Insurance Co.,* 92 Wis. 63.) The council provided for in this act will be without power to change the titles of the offices of the plaintiffs as members of the respective boards, particularly the title of the commissioner of charities, commissioner of board of safety, commissioner of board of health and member of the examining and supervising board of plumbers and plumbing, and to transfer the duties to be performed by these officers which are laid down and regulated by the general laws of the state. (*Nuns of St. Dominick* v. *Long Island City,* 48 Hun, 307; *State* v. *Butler,* 105 Maine, 91; *McGrath* v. *Grout,* 69 App. Div. 314; *Stanton* v. *Bd. of Suprs.,* 191 N. Y. 435; *People* v. *Klinck Packing Co.,* 214 N. Y. 138.)

McLAUGHLIN, J. This is a taxpayer's action brought to procure a judgment declaring the Optional City Government Law (Laws of 1914, chap. 444) to be unconstitutional, and to restrain the city of Watertown and its officers from organizing thereunder a form of city government which a majority of the qualified electors of such city have voted to adopt. The answer put in issue the alleged unconstitutionality of the act. The court at Special Term reached the conclusion that the act was unconstitutional and enjoined the city and its officers from further proceeding under it. An appeal was taken to the Appellate Division, where the judgment was affirmed, two of the justices dissenting, and appeal then taken to this court.

The act which the judgment declares to be unconsti-

tutional is entitled: "An act to authorize a city of the second or third class to adopt a simplified form of government."

It permits any city of the state of the second or third class to adopt, providing a majority of the qualified electors of such city so determine, one of the forms of government set forth in place of the one existing under its present charter. The different kinds of government permitted are in the act designated by the letters "A" to "G," both inclusive, any one of which a city of the class named may adopt. The city of Watertown, a city of the third class, attempted to adopt, a majority of the qualified electors thereof voting therefor, the form designated "C." The court at Special Term, by the judgment appealed from, held, and this is the view of a majority of the justices of the Appellate Division, that the attempt is ineffectual since the legislature by the act delegated powers which it could not do under the Constitution of the state. The provisions of the Constitution which it is claimed the act violates are: (a) "the legislative power of this State· shall be vested in the Senate and Assembly" (Sec. 1 of article III); (b) "it shall be the duty of the legislature to provide for the organization of cities and incorporated villages" (Sec. 1 of article XII); (c) laws shall not be passed except in conformity with the Constitution (Sec. 2 of article XII).

After a very careful consideration of the whole act I have reached the conclusion that it does not violate any provision of the Constitution, either state or federal. It must be borne in mind that an act cannot be judicially declared to be beyond the power of the legislature to enact unless one be able to point specifically to some provision of the Constitution which is in conflict with it. When this test is applied to the act under consideration I think it at once becomes apparent that the same is

a valid enactment of the legislative body of the state. What is the purpose of the act and what is the ultimate object sought to be accomplished by it?  It is simply, as indicated in the title, to authorize a city of the class named to adopt a simplified form of government.  How is this to be accomplished?  Simply by substituting one of the forms of government specified in the act for the one existing under the present charter, whether such charter were created by a general or special law.  (Sec. 23.)  This is all the act purports to do, and all that it does.  It is complete in itself and the forms of government provided for are also complete.  Nothing remains to be done to make the act an existing law.  A majority of the qualified electors of a city of the second or third class can make it applicable to such city and thereby adopt one of the forms of government provided for or not, as they see fit.  The act is not forced upon any city without its consent.  But if it votes to accept it, then the act, in effect, at once becomes the charter of the city and takes the place of the existing one, and thereafter all of the affairs of the city which are administered by officers elected or appointed as now provided by law are to be administered as provided in the act.  In the case of a third-class city, its affairs are to be administered by a mayor and four councilmen, all of whom shall be elected at large and when elected shall, for all purposes, constitute the council of the city.  (Sec. 87.)  The powers and duties of the mayor are defined (Sec. 89) as are those of the council.  (Secs. 36 and 90.)  Neither the legislative nor corporate powers of the city are abridged or impaired in any way, but the same are simply transferred to and are to be exercised by the council.  (Secs. 4 and 5.)  Even the charter of the city and all general and special laws relating thereto, except in so far as any of the provisions thereof are inconsistent with the act, are continued in full force and effect until superseded by the passing of

ordinances relating to the subject-matter therein specified. (Secs. 7 and 8.)   All provisions of law including ordinances regulating the exercise of the powers and the performance of the duties of officers and employees of the city are continued in full force and effect until superseded as provided by the act.   The council is given power, subject to the provisions of the act, to confer by ordinances " upon any officer or employee of the city any powers, or to impose upon any such officer or employee any duties, theretofore conferred or imposed upon any officer or employee by provision of law, and such powers or duties shall thereupon devolve upon or be discharged by such officer or employee upon whom the same shall have been so conferred or imposed; but the provisions of law regulating the exercise of such powers or the performance of such duties shall, subject to being superseded as herein provided, continue in force and apply to the exercise or performance thereof by the officer or employee upon whom such powers or duties are conferred or imposed, and whenever by any such ordinance all the powers and duties of any appointive officer or employee of the city are conferred or imposed upon one or more other officers or employees, such ordinance may abolish the office or employment held by the officer or employee whose powers and duties shall have ceased, and thereupon the term of office or employment of such officer or employee shall expire.   The council under any one of the plans of government defined in this act   *   *   *   shall, subject to the provisions of this act, have power to regulate by ordinance the exercise of any power and the performance of any duty by any officer or employee of the city; and upon the passing of any such ordinance every provision of the charter or of the second class cities law, applicable to such city, regulating the matters, or any of them, provided for in such ordinance, shall cease to have any force or effect in such city.   But nothing herein con-

tained shall be deemed to authorize the repeal or superseding of any provisions of law regulating the manner in which, or the conditions subject to which, franchises may be granted, or city real estate leased or sold, or municipal indebtedness incurred in any city, except to the extent of transferring powers or duties relating thereto to officers or employees of the city." (Sec. 37.) The administrative and executive power of the city, including the power of appointment of officers and employees, are vested in an official to be known as the city manager, who shall be appointed by the council and hold office during its pleasure. (Sec. 90.) It is the duty of the manager, among others, to see that within the city the laws of the state and the ordinances, resolutions and by-laws of the council are faithfully executed. (Sec. 91, subd. 2.)

It seems unnecessary to refer more specifically to the provisions of the act since those to which reference has been made clearly indicate, as it seems to me, that all the act does or attempts to do is to enable a city of the class named to adopt the act and thereby change its present form of government for another form, and then by ordinance to transfer and distribute the powers which the city officially now has to and among the officials of the new government necessary for the proper management of the city's affairs.

The powers granted by section 37 of the act, which it is claimed necessarily make that section, if not the whole act, unconstitutional, are simply, (a) to confer by ordinance upon any officer or employee of the city any powers or to impose upon any such officer or employee any duties *theretofore conferred or imposed* upon any such officer or employee by provisions of law, and when such transfer has been accomplished to abolish his office; (b) to regulate by ordinance the exercise of any power and the performance of any duty by any officer or

employee of the city. The powers thus conferred are made subject not only to the provisions of the act but also to all general laws applicable to the city and not inconsistent with it, and especially to the Civil Service Law of the state; also to all provisions of general or special laws regulating the granting of franchises, the lease or sale of city real estate and the incurring of municipal indebtedness. It is true that the section confers great power upon the council to control and manage the city government, but this power does not authorize the council to add to or take from the power already possessed by the city, or to avoid the performance of any duty now imposed on it by law. It is within the legislative province to direct in what way, through what board of municipal officers or agents, or by what municipal officers, the power given shall be exercised. Authority to distribute and regulate the exercise of a power is not equivalent to an authority to enlarge a power already existing.

In *People ex rel. Presmeyer* v. *Board of Commissioners of Police, Brooklyn* (59 N. Y. 92) it was held that an act amending the charter of the city of Brooklyn, which created a board of excise to have the powers and perform the duties of boards of commissioners of excise of the state, under the state law operated to transfer to other officers the powers and duties created by the state law but did not change the powers or duties themselves.

In *Matter of Zborowski* (68 N. Y. 88) it was held that a provision of an act relating to the city of New York, authorizing the common council to regulate by ordinance the building and repair of sewers, did not authorize the common council to make ordinances to cause sewers to be constructed, but only to regulate the manner of construction.

But it is suggested that the legislature did not have the power to authorize the city of Watertown to change

its present form of government for the one which a majority of its qualified electors have voted to adopt; in other words, that the legislature could not delegate to the electors of the city the power to determine by vote whether the act in question should apply to such city. I am of opinion that the suggestion has no legal basis for its support. The act, as we have before seen, is complete in itself. It is in legal effect a new charter which the city does not make, but which it accepts in place of the one which it now has, and the only powers delegated are those relating to local self-government which the legislature can grant if it sees fit to do so. The act does not, as claimed, permit the city to frame its own charter, but presents one to it to be accepted or not and defines, if accepted, the powers of the governing officers.

It is also suggested that the act is invalid because it only becomes effective so far as the city of Watertown is concerned upon the vote of the electors and for that reason falls within the rule laid down in *Barto* v. *Himrod* (8 N. Y. 483). I do not think the act comes within that rule. There the question presented was the constitutionality of an act entitled "An act establishing free schools throughout the state" and contained a provision to the effect that whether or not the act should become a law was to be determined by ballot at an election to be held in November following the passage of the act. It did not purport to be a complete act and whether it should ever become a law was left to the electors of the state to say. The rule there applied has not since been extended or applied unless the facts brought the case strictly within it.

Judge HISCOCK, in *People ex rel. Unger* v. *Kennedy* (207 N. Y. 533, 545), referring to the *Barto* case, said: "Subsequent decisions have declared that the doctrine of that case should not be pushed beyond the question

there involved and that the legislature may pass a statute which is a completed law affecting or conferring rights upon a restricted locality but to become operative only in the event of an affirmative vote by the people of such locality," and he reached the conclusion, and his view was adopted by this court, that an act of the legislature entitled " An act to erect the county of the Bronx " was constitutional notwithstanding the fact that it contained a provision that the new county should not be formed and the act should not become effective unless a majority of the qualified electors of the territory, out of which the proposed county was to be erected, should vote in favor of it.   The basis of the decision was that the act was complete when it left the legislature and the fact that it was for the voters to determine whether or not they would accept it did not make it unconstitutional.   Other decisions of this court are, in principle, to the same effect.

Thus, in *Bank of Rome* v. *Village of Rome* (18 N. Y. 38, 45) the act under consideration authorized the trustees of the village of Rome to subscribe for and take stock in a railroad corporation but provided they should have no power to make such subscription until the act had previously been approved by two-thirds of the qualified electors of a certain class.   It was held that the act was constitutional, the court saying: " The case is, therefore, in substance, only a submission to a vote of the parties interested, of the question whether or not they chose that the municipal corporation should subscribe to the railroad.   In other words, the legislature did not compel the village to subscribe but, creating by law the necessary machinery, left it to the taxpayers to determine that matter."

In *Starin* v. *Town of Genoa* (23 N. Y. 439) an act authorizing the town trustees to borrow money and invest the same in the stock of a proposed railroad,

providing the consent of two-thirds of the taxpayers was obtained, was held valid.

In *Bank of Chenango* v. *Brown* (26 N. Y. 467, 474) the court had under consideration an act in principle very much like the present one. The village of Norwich was chartered by an act of the legislature passed April 17, 1816. (Laws of New York, vol. 4, p. 148.) In December, 1847, the legislature passed a general act to provide for the incorporation of villages. (Laws of 1847, vol. 2, p. 432.) The ninety-second section of the act authorized the electors of any village then incorporated to declare by resolution, at their annual meeting, that any of the sections of the act specified in such resolution should apply to such village, and provided that from and after twenty days from the adoption of any such resolution, the sections of said act should apply to the same, and all laws inconsistent with the sections so adopted should have no force or effect in respect to such villages. It was there contended, as it is here, that the act was unconstitutional because it delegated to the electors the power in effect to make a statute and to repeal one, create a new charter and substitute it in place of an existing one. This court brushed the contention aside. Judge EMOTT, who delivered the opinion, said: " In the present case the legislature passed a statute conferring certain powers, and imposing certain duties upon the corporations of villages and their officers. The act was complete in itself, and was effectual for the purpose of providing for the incorporation of new villages, independent of any such action as is contemplated by the 92d section. I do not, however, attach any importance to this fact. If the legislature had passed an act containing simply the sections specified in the resolution of the village meeting of Norwich, and providing that their provisions might be accepted by any village in the state, or by the village of Norwich, and become part of

the charter thereof, provided the electors of such village signified their acceptance of the same, I can perceive no constitutional or other objection to such a law. This was precisely the effect of the portion of the law of 1847 now under consideration, as to this particular case. The legislature in effect enacted certain amendments to the charter of the village of Norwich, but provided that the electors of that village should be allowed and required to signify their consent and acceptance of such amendments before they should take effect. This was simply authorizing the members .or electors of a corporation to signify whether they would accept a grant of additional powers or submit to new restrictions. It was not necessary to have the corporate consent to such an act, but such consent certainly did not invalidate it. It would disturb a vast amount of the past legislation of the state, if such a statute were declared void or ineffectual. I perceive no difference whether the statute submits an entirely new charter, or amendments to an existing one, to the constituency to be affected. Either way the legislative action is complete and final, and the vote of the municipality is simply a · determination of the expediency of their accepting the result of that action."

This authority was cited with approval in *People ex rel. Unger* v. *Kennedy* (*supra*) and in *Stanton* v. *Board of Supervisors, Essex Co.* (191 N. Y. 428). In the *Stanton* case the court had under consideration provisions of the County Law (Laws of 1892, chap. 686, §§ 31, 32 and 33) relating to the changing of a county seat. The act provided that after such change had been approved by the board of supervisors, then the question of the proposed removal should be submitted to the electors of the county at the ensuing general election in the manner therein provided, and if a majority of the electors should vote in favor of such removal, the proceedings of the board should

be ratified and the change made; otherwise not. It was held that these provisions were constitutional.

The authorities cited, and many others that might be, establish the rule that while the legislature may not delegate the power to make a charter for a city or a village, it may itself do that and then permit the electors to determine whether they will adopt it or not, and if the same be adopted it becomes the charter with the same force and effect as if the legislature had created it by an act for that specific purpose. This, in effect, is precisely what the legislature has done for cities of the second or third class. They may have a simplified form of government if the electors so decide by accepting the act under consideration and adopting one of the forms of government thereby created.

Outside of our own state it has frequently been determined that acts creating or amending municipal charters or granting municipal power are not rendered unconstitutional because a provision is inserted that the voters of the territory to be affected shall have the right to determine whether the act shall become applicable to their locality. (Dillon on Municipal Corporations [5th ed.], sec. 69; *City of Paterson* v. *Society, etc.*, 24 N. J. L. 385; *State ex rel. Dome* v. *Wilcox*, 45 Mo. 458; *People ex rel. Graves* v. *McFadden*, 81 Cal. 489; *State* v. *Parker*, 26 Vt. 357.) And in many states of the Union city governments have been organized under acts quite similar to the one under consideration and their constitutionality, so far as I have been able to discover, has in each instance been held valid by judicial decree. (*Eckerson* v. *City of Des Moines*, 137 Ia. 452; *State ex rel. Simpson* v. *City of Mankato*, 117 Minn. 458; *Cole* v. *Dorr*, 80 Kans. 251; *People ex rel. City of Springfield* v. *Edmands*, 252 Ill. 108; *State ex rel. Baughn, Jr.,* v. *Ure*, 91 Neb. 31; *Mayor* v. *State*, 102 Miss. 663; *State ex rel. Bloomer* v. *Canavan*, 155 Wis. 398; *Matter of Petition, Cleveland, Mayor*, 52 N. J. L. 188.)

The opinion might well end here except for the fact that it is asserted the act is invalid because it delegates power to regulate duties, not strictly municipal, but rather those which involve the performance of state functions, *e. g.*, those relating to assessments, public safety, health, charity and plumbers' licenses. The exercise of the power relating to the subjects named undoubtedly does, as does the exercise of powers relating to all the officers of every city and village of the state, in a certain sense involve state functions. All the powers of government relating thereto are delegated. (*Clarke* v. *City of Rochester*, 28 N. Y. 605; *Matter of Zborowski, supra; Genet* v. *City of Brooklyn*, 99 N. Y. 296, 307; *Terrel* v. *Wheeler*, 123 N. Y. 76.) But even so the act is not thereby rendered unconstitutional. The power relating to assessments can be delegated and was so determined by this court in *Clarke* v. *City of Rochester* (*supra*). In the *Genet* case the power of the legislature to delegate to commissioners the power to fix an area of assessment and to impose the costs of widening a street was upheld, the court saying: " The legislature may itself fix a district of assessment, or the power may be delegated by the supreme legislative body to the authorities of subordinate political and municipal divisions, or other official agencies, as may also the incidents of the power, such as the apportionment and distribution of the tax, as between the persons and property upon which it is laid."

In the *Terrel* case the court also upheld the power of the legislature to delegate to the board of assessors the power to reduce taxes or assessments, and in doing so said: " Could the legislature devolve upon the board of assessors the jurisdiction specified in the section? Why not? It was a local board — one of the departments of the city government charged by the city charter with the general duty of making assessments for the purpose of taxation. Its members represented the city and the

people of the locality, and it was an appropriate tribunal for the exercise of the jurisdiction conferred." (p. 82.)

*Matter of Zborowski* (*supra*) involved the question as to whether the legislature could delegate the power to certain officials of the city of New York to construct a sewer and levy assessments to defray the expense thereof. The act was challenged on the ground that it delegated powers relating to taxation. In disposing of the contention the court said: " It is contended * * * that the power to tax may not lawfully be delegated by the legislature. This we do not concede in that broad statement. The legislature may delegate to a municipality the power to tax for the expenses of the local government and the power to assess for the expenses of local improvements. All the powers of local government are delegated. In the case at hand, the power of assessment is delegated to the corporate body, the mayor, aldermen and commonalty of the city of New York, and it may lawfully be exercised through the officers of the corporation, if the terms of the legislative delegation so provide." (p. 96.)

What has been said as to the delegation of power relating to assessments is equally true as to the delegation of powers relating to public safety. (*People ex rel. Dunn* v. *Ham,* 166 N. Y. 477; *People ex rel. Devery* v. *Coler,* 173 N. Y. 103; *People ex rel. Werner* v. *Prendergast,* 206 N. Y. 405, 409.) In the latter case this court said: " The police department and the departments of education and health in any city are engaged in the discharge of duties which very vitally affect the general public, and yet it would be opposed to widespread and well-settled opinion to hold that the members of such departments are state officials in the sense of being engaged in its service."

Also as to public health. (*Metropolitan Board of Health* v. *Heister,* 37 N. Y. 661; *Polinsky* v. *People,* 73 N. Y. 65; *People ex rel. Lieberman* v. *Vandecarr,*

175 N. Y. 440; *People ex rel. Bush* v. *Houghton,* 182 N. Y. 301, 306; *Crayton* v. *Larabee,* 220 N. Y. 493.) In the *Crayton* case this court sustained the acts of a health officer authorized by ordinance adopted by the city of Syracuse under the powers delegated by the Second-Class Cities Law.

In the *Bush* case the court, referring to the duties of a member of the board of health, said: " They are subserving the general public interest in promoting and maintaining sanitary conditions in the locality; but they, equally, execute a corporate purpose of the municipal government; which, if it is not to be implied, is actually made a part of its charter by the laws. They are to be appointed under the statute, primarily, by the governing municipal authorities and the performance of their duties is confined territorially to the city. It seems to me that the situation was such as the people intended to be met, when establishing in the fundamental law of the state the principle of ' home rule ' for its political subdivisions."

The same reasoning applies equally to public charities (*Maxmilian* v. *Mayor, etc., of N. Y.,* 62 N. Y. 160) and to the licensing of plumbers. (*People ex rel. Nechamcus* v. *Warden, etc.,* 144 N. Y. 529.)

The authorities cited, as well as the act itself, irresistibly lead me to the conclusion that the powers delegated are not those committed by the Constitution solely to the legislature, but such as it may commit to a locality in so far as its government is concerned.

The main object of the act, as has already been indicated, is to permit the qualified electors of a city of the class named to adopt a simplified form of government, if they so desire, and only such powers as are necessary to accomplish that object are conferred. It may be that when the city proceeds to carry out the object of the act the council will attempt to pass ordinances which

it does not have the power to do, but if so the court will not hesitate, when that time arrives, to place its stamp of disapproval upon the same. Unconstitutional ordinances have been attempted to be passed under many charters of cities of the state, but no one as yet has suggested, so far as I know, that by reason of that fact the charter itself is unconstitutional.

The whole trend of modern thought and recent legislation is toward vesting in each municipality the management of its local affairs and I have been unable to discover any valid reason why the present act, which is a step in that direction, should not be given a fair trial without interference from the court. The act is not an attempt upon the part of the legislature to shirk its duty or to delegate to another body the power invested solely in it. On the contrary, it is to permit each locality to determine for itself the form of government which it will have, based upon modern ideas rather than a form of government which has been tried and in some respects at least found unsatisfactory. I for one am unwilling to subscribe to the doctrine that the legislature had not the power to do this.

For the reasons above set forth I advise that the judgment of the Appellate Division and of the Special Term be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., CUDDEBACK, HOGAN, POUND and ANDREWS, JJ., concur; CHASE, J., concurs in result.

Judgments reversed, etc.