In the Matter of the Application of C. MOSSMAN McLEAN, Petitioner, for a Peremptory Mandamus Order against NORMAN A. BOYD, as Mayor of the City of Binghamton, N. Y., and Others, Defendants.

Supreme Court, Broome County, April 27, 1931.

*Robert S. Wickham*, for the petitioner.

*Edwin H. Moody, Corporation Counsel* [*Edward F. Ronan* of counsel], for the defendants.

PERSONIUS, J. The petitioner is a taxpayer and elector of the city of Bingamton. The defendants are the mayor, president of the common council, councilmen and clerk of said city.

On March 30, 1931, at ten-thirty o'clock A. M., a petition was filed with the city clerk, signed by 5,086 qualified electors of the city, under the " Optional City Government Law " (Laws of 1914, chap. 444), asking that there be submitted to a vote the question: " Shall the City of Binghamton adopt a simplified form of government defined as Plan C." Section 19 of that law provides: " The common council shall at its *next* regular meeting succeeding the presentation of the petition designate a day for the holding of a special election to ascertain the will of the electors." The next regular meeting was held at seven-thirty o'clock P. M., the same day. The petition was then received and referred to a committee.

Later, at the same meeting, a local law which had been introduced on March sixteenth was adopted. It purports to repeal and supersede the Optional City Government Law, so far as it applies to the city of Binghamton, and provides that said law shall not in any respect have any application to the city of Binghamton. Said local law was signed by the mayor and became effective, if valid, on April 10, 1931.

At the same meeting on March 30, 1931, under section 20 of the City Home Rule Law (Laws of 1924, chap. 363), there was introduced a local law providing for the submission to the electors of the question, shall there " be a commission to draft a new city charter." This local law was adopted April thirteenth and provides for the submission of said question on July 28, 1931.

The petition for the submission of the question of the adoption of Plan C under the Optional City Government Law having been duly filed on March 30, 1931, and the common council not having designated a day for holding a special election thereon, at its next regular meeting at seven-thirty o'clock P. M., March thirtieth, or at its next regular meeting on April 13, 1931, this proceeding was commenced asking for a peremptory order of mandamus to compel the common council to designate a day for said special election and to perform all other acts required by the Optional City Government Law. Unless this law has been legally repealed by the local law of the city of Binghamton, adopted under the City Home Rule Law, the petitioner is entitled to said order. (*Matter of Klein* v. *Dalton*, 245 N. Y. 537.) It was there held that the Optional City Government Law was in full force in 1927, notwithstanding the adoption of the City Home Rule Law in 1924.

Two questions arise: (1) Did the Binghamton common council have the power under the Home Rule Law to repeal the Optional

City Government Law, so far as it affects said city? (2) If it did, must the common council, notwithstanding the repeal, proceed to hold the special election under the petition of the electors, it having been filed March thirtieth and the repeal not becoming effective until April tenth?

On the first question no authority has been found or called to our attention. In *Matter of Klein* v. *Dalton* (*supra*) there apparently had been no attempt on the part of the common council to repeal the Optional City Government Law.

The defendants argue that the so-called Home Rule amendment to the Constitution (Art. 12, §§ 2 to 7), and the City Home Rule Law adopted pursuant thereto, empowered the common council to supersede any act of the Legislature which " does not in terms and in effect *apply alike to all cities* " (City Home Rule Law, § 12), and that as the Optional City Government Law does not apply to all cities but only to cities of the second and third classes (§ 2), the council could repeal it.

It will be noted that section 12 of the City Home Rule Law (as amd. by Laws of 1928, chap. 674) refers to a local law " *changing* or *superseding* any *provision* " of an act of the Legislature. The local law, enacted by the common council, while using the word " superseding," in effect absolutely *repeals*, not a " *provision* " of, but the whole act of the Legislature known as the Optional City Government Law.

It should also be noted that former section 2 of article 12 of the Constitution, which divided cities into three classes, was omitted in the Home Rule amendment to the Constitution in 1923. The classification of cities seems, therefore, to be abolished, except perhaps as a means of designation when cities are referred to by classes in previous legislation.

The Optional City Government Law, being applicable to cities formerly classified as second and third class, did the Legislature intend by the City Home Rule Law, particularly sections 11 and 12 thereof, to give every city the right to repeal that law so far as it affects such city?

A brief review of the development of Home Rule legislation may be helpful. For years, the trend of public opinion and legislation has favored vesting in each municipality the management of its local affairs, and placing in the hands of the electorate of their respective cities the choice of the form of charter under which they will be governed. In 1913, by chapter 247 of the Laws of that year, article 2-A of the General City Law was adopted, popularly known as a Home Rule Act. In 1914 the Optional City Government Law was adopted. By it the *Legislature enacted*

several forms of charters and *permitted* a city to adopt (not to enact) one of those forms. (*Cleveland* v. *City of Watertown*, 222 N. Y. 159.) Still later, and in 1923, article 12 of the Constitution was amended by inserting the so-called Home Rule provisions. It provides (§ 2) that the Legislature can act (in relation to the " property, affairs or government " of cities) only by laws which apply alike to all cities, and sections 3 to 5 give every city the power to make local laws. By section 4 matters not relating to the property, affairs or government of cities are left entirely with the Legislature. Pursuant to these constitutional amendments, the Legislature in 1924 enacted the City Home Rule Law.

The trend of this legislation has been to place more power over city affairs in the electors and the local legislative bodies. Has the Legislature, however, made it possible for the local legislative body to take from the electors absolutely the power to *initiate* a change in the charter — the fundamental governing law of the city? Such power is found only in the Optional City Government Law (except as to cities, if any, already having commission form of government). If a common council can repeal that law, the power is extinguished.

Section 20 of the City Home Rule Law contains the only method of obtaining a new charter under that law. By subdivision 1 the common council *may* submit to the electors the question: " Shall there be a commission to draft a new city charter? " The electors may not demand it. If the people vote favorably, the common council fixes the number of members of the commission and *may* *appoint* the members. The people may not name them. Only in cities having a *commission* form of government may the qualified electors initiate the adoption of a new charter. (§ 20, subd. 2.) If common councils may repeal the Optional City Government Law, it follows that in most cities, including Binghamton, a new charter can be obtained by the electorate *only* if its common council submits the question of the appointment of a charter commission, and then only by a commission appointed by the council.

In view of the trend of legislation beginning in 1913, and even prior, I cannot conclude that the Legislature intended to permit a council to so limit the power of the electorate over its charter by repealing the Optional City Government Law. Section 31 of the City Home Rule Law provides that " The powers herein granted shall be in *addition* to all other powers granted to cities by other provisions of law." This indicates a legislative intent to extend and not curtail the power of cities in local matters.

After the adoption of the City Home Rule Law, section 4 of the

Second Class Cities Law was amended (Laws of 1925, chap. 392) and provides that each provision of such law applies until " superseded pursuant to the city home rule law or otherwise changed." This indicates legislative intent that the provisions of that law might be changed under the City Home Rule Law. But no similar provision was inserted in the Optional City Government Law. There is nothing to indicate that the Legislature intended to give a common council power to deprive the electors of a city of the benefit of the Optional City Government Law, except the negative circumstance that the constitutional classification of cities was abolished. Prior thereto, a law which applied to one or more classes of cities was a general law. (*Matter of Mayor, etc.*, 246 N. Y. 72, 75, 76.) Now the Legislature can speak on certain subjects only by laws applying to all cities. Reading section 11 of the City Home Rule Law (as amd.) literally might give the common council power to change or supersede any act of the Legislature not applying to all cities, but we cannot conclude that the Legislature by such indirection intended to give a common council the right to absolutely repeal that law.

The second report of the Home Rule Commission (Legislative Document [1925] No. 72) indicates the intent of the Commission to leave the Optional City Government Law undisturbed so that cities could thereafter " take advantage of its provision and elect to adopt a form of government under it " (p. 45). The report also indicates that it was " not the intention of the commission to abrogate or withdraw any power from the cities of the State, no matter in what law the authority is found " (p. 44). The Court of Appeals has held that such purpose of the Commission was effected and that the City Home Rule Law did not repeal or otherwise affect the Optional City Government Law. (*Matter of Klein* v. *Dalton, supra.*)

To hold that a common council may repeal the Optional City Government Law is to say that the City Home Rule Law, intended to give municipalities a maximum of power and latitude in choosing a local form of government, actually limits such power so far as the electors are concerned. To deprive electors of a city of the power to initiate a change in its charter would deprive them of the home rule which the Home Rule amendment to the Constitution and the City Home Rule Law sought to confirm.

No opinion was written in *Matter of Klein* v. *Dalton* (*supra*), but in the brief of the successful respondent it is argued that the abolition of the classification of cities may be said to extend the Optional City Government Law to all cities, including those of the first class, instead of removing it from second and third class cities. It should be borne in mind that when a city adopts a form of charter pro-

vided by the Optional City Government Law, it does not *enact* that charter. When that law was passed, only the Legislature could enact a charter. The Legislature *did enact* those charters. All that is done by a city is to *adopt* a form of charter already *enacted* by the Legislature. (*Cleveland* v. *City of Watertown*, 222 N. Y. 159.)

The last Legislature enacted an amendment to section 3 of the Optional City Government Law, effective January 1, 1932, providing that no city should thereafter adopt any of the plans of government provided in that law. If the Legislature considered that the Optional City Government Law did not apply alike to all cities, it had no power to enact legislation " in relation " to it. (Const. art. 12, § 2.) The Associated Press just announces the veto of this amendment, the Governor saying in part that it would prevent *citizens* from seeking to improve local government through the present optional method, and that it  as out of keeping with the spirit of home rule.

It is said that the electorate can obtain relief under the City Home Rule Law by electing a common council favorable to a new charter, but conceivably out of thirteen councilmen, seven unfavorable may be elected by small majorities and six favorable may be elected by large majorities, in which event the majority of the councilmen do not represent the majority of the electors at large.

The second question arises under section 93 of the General Construction Law which preserves any act done or right accruing or accrued under a statute prior to the time of its repeal. The petitioner argues that upon filing the petition on March thirtieth, there accrued to the petitioner's electors the *right* to have a special election called by the common council, under section 19 of the Optional City Government Law. The defendants reply that the petitioner has no " right " within the meaning of said section 93. They cite cases involving the repeal of a matter of procedure and involving property rights which we do not think are controlling. They cite *Webster* v. *Town of White Plains* (93 App. Div. 398). There the statute said: " The board [of supervisors] *may* * * * authorize said town * * * to borrow * * * money." The statute was amended as to one of the requirements necessary to authorize the board to act. It will be noted that in that case there was no mandatory requirement that the board of supervisors should act. The supervisors had a discretion. In the present case the common council has no discretion but must call a special election. *Palmer* v. *Hickory Grove Cemetery* (84 App. Div. 600) is likewise distinguishable.

The petitioner is entitled to the order requested, and I think

the city clerk should be required to file a certified copy of the petition with the commissioners of election, under the first sentence of section 18 of the Optional City Government Law. That section is headed " Submission of questions at general city election," but it is apparent that only the last sentence applies where the question is submitted at a general city election.

All proceedings under the order herein should be stayed pending appeal, provided the same is taken immediately and an appeal brought on for argument at the May term of the Appellate Division.

Submit order accordingly.