Irene L. Meyers et al., Respondents, v. New York State Division of Housing and Community Renewal, Respondent; Incorporated Village of Rockville Centre, Appellant, and Arthur A. Kaye et al., Intervenors-Appellants.

Second Department, March 15, 1971.

*William E. Seward* for appellant.

*Bennett, Kaye & Scholly (James D. Bennett* of counsel), for intervenors-appellants.

*Leonard S. Clark (Carl Jay Nathanson* of counsel), for respondents.

*Louis J. Lefkowitz, Attorney-General (Daniel M. Cohen* and *Samuel A. Hirshowitz* of counsel), in his statutory capacity under section 71 of the Executive Law.

HOPKINS, Acting P. J.  By this appeal we are presented with the questions whether the statute conferring on a Village Board of Trustees the right to decontrol residential housing accommodations imposed by State law is constitutional and whether the exercise of that right is reviewable by the courts.  The Special Term determined that the statute is constitutional and that the manner of the exercise of the right in this case is subject to a trial.  We do not wholly concur with the Special Term.  We agree with the holding that the statute is constitutional, but think that summary judgment should have been granted to the appellants.

The plaintiffs are tenants of rent-controlled housing accommodations in the defendant Village of Rockville Centre.  In 1962 the Legislature amended the rent control statute to empower the governing body of a village to adopt a resolution requesting the State Division of Housing and Community Renewal to decontrol housing accommodations within the village after a public hearing on notice and upon a finding that decontrol is warranted (Emergency Housing Rent Control Law, § 12, subd. 2; L. 1946, ch. 274, as amd. by L. 1962, ch. 973).  In 1967, after the public hearing required by the statute, the Board of Trustees of the defendant village adopted the resolution authorized by the amendment of 1962.  The State Division issued its order of

decontrol on October 1, 1968, to be effective on November 1, 1968.

On October 7, 1968 the plaintiffs began this action for a judgment declaring subdivision 2 of section 12 of the Emergency Housing Rent Control Law unconstitutional, the resolution of the Village Board without legal effect, and the order of decontrol unlawful — all of which would have the force of continuing rent control in the village. After joinder of issue, the plaintiffs moved for summary judgment, the defendants-intervenors (a group of landlords) cross-moved for summary judgment and the defendant village also requested summary judgment. The Special Term denied all the motions, stating that a triable issue was raised with relation to the justification of the finding by the Village Board that decontrol was warranted. Both the village and the intervenors appeal.

Rent control is a matter of State interest and properly the subject of regulation by State enactment (*Bucho Holding Co.* v. *Temporary State Housing Rent Comm.,* 11 N Y 2d 469). As State regulation hinges on a condition of emergency, the State enactment ends when the emergency ends (*Teeval Co.* v. *Stern,* 301 N. Y. 346, 362, cert. den. 340 U. S. 876). The Legislature, after the enactment of rent control in 1950 (L. 1950, ch. 250), has gradually shifted the responsibility for the determination of the necessity to continue rent control to the municipalities in the State. In 1953 counties and cities were authorized to request the end of control (L. 1953, chs. 320, 321).[1] In 1955 the right of local option was removed from the county and placed in the town (L. 1955, ch. 685) and in 1962 a village was authorized to exercise that right, in addition to the towns and cities (L. 1962, ch. 973).

The legislative policy for this use of local responsibility has been stated in clear language (N. Y. Legis. Doc., 1957, No. 22, p. 17): " The Legislature has empowered localities to decontrol local housing accommodations which in their judgment no longer need rent control. This is a reaffirmation by the Legislature of the principle of Home Rule. Each community knows or should know local needs better than anyone else. It must be assumed that local elected officials — elected by a majority of the people in their respective communities — express the popular will of their localities."

Thus, the Legislature took notice that housing conditions are

---

1. Though the statute speaks in terms of a request, actually the action of decontrol was required to be made by the State Division of Housing and Community Renewal upon request (see Report of Temporary State Commission to Study Rents and Rental Conditions; N. Y. Legis. Doc., 1953, No. 43).

relatively fluid, differing from municipality to municipality, becoming improved as the supply of housing within the community increases and the need for housing is more nearly satisfied. We think that the effectuation of the legislative policy by the delegation of power to the local unit of government is plainly constitutional (*People ex rel. Wakeley* v. *McIntyre,* 154 N. Y. 628, 632; *Stanton* v. *Board of Supervisors of County of Essex,* 191 N. Y. 428; *Cleveland* v. *City of Watertown,* 222 N. Y. 159). As was stated in *People ex rel. Unger* v. *Kennedy* (207 N. Y. 533, 545): "the legislature may pass a statute which is a completed law affecting or conferring rights upon a restricted locality but to become operative only in the event of an affirmative vote by the people of such locality." We see no essential difference between a statute conferring rights on the electors of the locality and a statute conferring rights on the representative body of the locality. Both lie within the scope of the power of the Legislature.

The plaintiffs' argument of the invalidity of the action of decontrol by the Village Board has two footings. First, it is said that the Village Board did not observe the standards which are contained within the statute; and second, that the courts may decide whether the conditions within the village met those standards.

The resolution of the Village Board, it is true, professed to do no more than to reflect (1) that a public hearing to consider whether decontrol of rent of housing accommodations in the village was warranted had been held after due notice and (2) that after deliberation the board found that decontrol was warranted. In this finding the board followed the statute, which provides that "notwithstanding the provisions of this section or any other provision of this act, the local governing body of a city or town or village, upon a finding that decontrol * * * is warranted after a public hearing * * * may adopt a resolution requesting the commission [the State Division] to decontrol all or any specified class of housing accommodation in such city or town or village" (Emergency Housing Rent Control Law, § 12, subd. 2). Though this language demands only that the local body find that decontrol is warranted, the plaintiffs read into the language standards applicable to the State Division whenever it determines without local request that decontrol is no longer required. Thus, the State Division must find (1) that the percentage of vacancies in the housing accommodations is 5% or more or (2) that rental accommodations are so available that rent control is unnecessary (Emergency Housing Rent Con-

trol Law, § 12, subd. 1). So, also, the plaintiffs point to the standard set for decontrol by cities of one million population or more, which requires that in every third year after 1967 a survey be made of the supply of housing accommodations, the condition of such accommodations, and the need for continuing rent control (Local Emergency Housing Rent Control Act, § 3; L. 1962, ch. 21).

Doubtless the Legislature could have provided for a uniform standard throughout the State by which the need for rent control could be ascertained. But it elected not to do so; and, for reasons which it found persuasive, distinguished between the State Division, the City of New York, and other municipalities in the State. To conclude that the standards applicable to each are also applicable to all confounds the statute, for there is no express direction that this is the legislative intention, and instead an express direction that the only standard applicable to the municipalities is that the local governing body find that decontrol is "warranted", without any other qualification. Moreover, the plaintiffs' construction would completely omit the legislative intent that subdivision 2 of section 12 of the Emergency Housing Rent Control Law stand alone manifested by the instruction found at the very beginning of the subdivision, that its language prevail "notwithstanding the provisions of this section or any other provision of this act".

The plaintiffs' emphasis on the existence of standards implies of necessity that standards must be fixed by the Legislature whenever it delegates power to municipalities. But that is not a valid premise. Where the grant of power is specially defined, the use of the power by the municipality has no other limitations than would circumscribe the Legislature itself. "An ordinance adopted by such a corporation, pursuant to authority expressly delegated by the legislature, has the same force within the corporate limits as a statute passed by the legislature itself" (*Village of Carthage* v. *Frederick,* 122 N. Y. 268, 271; see, also, *People ex rel. Doyle* v. *Atwell,* 232 N. Y. 96).[2] Here, the grant of power and the manner in which the power may be exerted are particularized in detail; and the contention that standards must accompany the delegation of power cannot be sustained.

Where the grant of power is specially designated, the exercise of discretion by the municipality under the grant is ordinarily not reviewable, no more than the exercise of power by the

2. The rule is different when the power is general or implied; in that case the power must be reasonably exercised (*Village of Carthage* v. *Frederick,* 122 N. Y. 268, 271; 40 N. Y. Jur., Municipal Corporations, § 775, pp. 80–81).

Legislature (*Gaynor v. Rockefeller,* 15 N Y 2d 120, 131; *Saltz-man v. Moses,* 247 App. Div. 343; 38 Am. Jur., Municipal Corporations, § 530). The Legislature, certainly, might have removed the restriction on housing accommodations which it imposed without judicial interposition; so, too, where in the application of its sovereign authority it allowed local units of government to make the same decision in light of local conditions, the apportionment of its power did not change the essential character of sovereignty. Thus, for example, the refusal of a city to issue a permit for the use of its streets by an omnibus corporation, though capricious and unreasonable, is beyond the control of the courts (*Kittinger v. Buffalo Traction Co.,* 160 N. Y. 377; *Matter of Village of Bronxville v. Maltbie,* 284 N. Y. 206; 12 McQuillin, Municipal Corporations [3d ed.], § 34.22, pp. 64–65).

The plaintiffs made no claim in the papers submitted on behalf of their motion for summary judgment that the Village Board had acted fraudulently or deviously. Beyond their claims that the lack of standards voided the grant of power of decontrol and that, secondarily, the statute implied the use of standards provided for the State Division or the City of New York, both of which we have considered above, the plaintiffs alleged that the Village Board was not " warranted ", in the language of the statute, in making its decision to decontrol housing within the village. We think that the legislative judgment to decontrol was not subjected to judicial scrutiny because the statute contained the cautionary words " [if] warranted " in conferring the power of decontrol. All legislative decisions are presumed to be warranted; the wisdom and the expediency of the measure adopted pursuant to the exercise of the legislative dominion cannot be inquired into by the courts, else the principle of separation of powers is nullified (*City of Rochester v. Macauley-Fien Milling Co.,* 199 N. Y. 207; *Fifth Ave. Coach Co. v. City of New York,* 194 N. Y. 19; *Congregation Beth Israel West Side Jewish Center v. Board of Estimate of City of N. Y.,* 285 App. Div. 629).

The order appealed from should be modified, on the law, by granting the defendants-intervenors and the defendant village summary judgment declaring that subdivision 2 of section 12 of the Emergency Housing Rent Control Law is valid, that the courts may not interfere with the action of the Board of Trustees of the Village of Rockville Centre here in question and that the order of decontrol issued by the State Division of Housing and Community Renewal here in question is valid; and the order, insofar as appealed from, should be affirmed as so modified, with

a separate bill of $10 costs to appellants appearing separately and filing separate briefs, against plaintiffs-respondents.

MUNDER, LATHAM, SHAPIRO and CHRIST, JJ., concur.

Order modified, on the law, by striking from the first decretal paragraph thereof so much as denied the cross motion of defendants-intervenors and by substituting therefor a provision granting defendants-intervenors and defendant Village of Rockville Centre summary judgment declaring that subdivision 2 of section 12 of the Emergency Housing Rent Control Law is valid, that the courts may not interfere with the action of the Board of Trustees of the Village of Rockville Centre here in question and that the order of decontrol issued by the State Division of Housing and Community Renewal here in question is valid; and the order, insofar as appealed from, is affirmed as so modified, with a separate bill of $10 costs to appellants appearing separately and filing separate briefs, against plaintiffs-respondents.

