ROCHESTER GAS AND ELECTRIC CORPORATION, Respondent, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Appellant.

Third Department, March 8, 1979

**APPEARANCES OF COUNSEL**

*Peter H. Schiff (Howard J. Read* of counsel), for appellant.

*Nixon, Hargrave, Devans & Doyle (Michael R. Lindburg* and *Richard N. George* of counsel), for respondent.

*Kalman Finkel (John E. Kirklin, Carol Kellermann* and *Michael D. Hampden* of counsel), for Legal Aid Society of New York City, *amicus curiae.*

*Bernard Hulkower (Thomas J. Farrelly* of counsel), for Consolidated Edison Company of New York, Inc., *amicus curiae.*

*Gould & Wilkie (Peter V. K. Funk* of counsel), for Central Hudson Gas & Electric Corp., *amicus curiae.*

### OPINION OF THE COURT

HERLIHY, J.

The Public Service Commission (hereinafter Commission) became aware that tenants of multiple dwellings were in some instances being subjected to a diversion of their electricity for the benefit of their landlords or other tenants. It was entirely possible that neither the tenant nor the landlord or other beneficiary of the diversion would know of such a diversion prior to investigation on behalf of the tenant who believed he was not using as much electricity as his meter would register. The disadvantage of the tenant was that in most instances his meter would be located in an area over which only the landlord had control or where other tenants or users would have access to the transmission line from the meter to the rented premises. In any event, it is obvious that tenants would not realistically be able to determine diversion, innocent or deliberate, without assistance.

The Commission published a proposed order on April 19, 1977 and it was then noted that the petitioner was objecting to any theory which would not make the customer-tenant liable for all of the electricity passing through his assigned meter.

On September 15, 1977 the Commission issued the order which formed the basis of this proceeding. In particular it directs that the utilities must file tariffs effective November 1, 1977 to the effect that "tenant's" shall pay only for service for their use unless they have agreed otherwise with a diverter. The order established procedures which require the utility company to investigate complaints of postmeter diversion; make an assessment of liability; and adjust tenant customer bills to reflect credit for the estimated value of the diverted service. If the beneficiary of the diverted service is unclear, the landlord is billed for the value of such service and the utility must invite both landlord and tenant to a conference at which the utility, acting as the tenant's representative, will seek to have the landlord eliminate the diversion. Failing

resolution, the Commission, at the behest of either the landlord or the tenant, shall intervene. Amounts credited to the customer due to actual or presumed diversion, which are not collectible from another party, would be written off and ultimately charged to the general body of ratepayers.

The petitioner applied for a rehearing contending that the Commission had exceeded its authority by ordering adjustments for diversions after the electricity left the metering device; that there had been no showing of any need for the Commission to take any action to prevent diversion; and that the order was against public policy as it might change custom and common law as to liability for accidents. The order is as follows:

"1. Each electric and gas utility shall file tariff provisions effective November 1, 1977 to eliminate any provisions that require tenants to pay for service where the service is not supplied for the tenant's use or where the tenant has not agreed to pay for usage outside his apartment.

"2. Each electric utility shall notify tenants at the time they apply for service that they may be paying for usage outside their apartment, if, in accordance with applicable tariff, a tenant may be billed through one meter for his usage and for common facilities.

"3. Each electric utility shall adopt the procedures discussed herein for its handling of complaints of diversion.

"4. Each electric and gas utility shall notify applicable authorities in cases where it discovers wiring or piping irregularities.

"5. Each electric utility shall publish notification of the changes required in paragraph one in the manner specified by 16 NYCRR 136.70.

"6. The staff shall report as soon as possible after April 30, 1978, on the operation of the procedures since the adoption. The report shall suggest whatever changes seem necessary, and recommend whether a hearing should be held to consider additional matters.

"7. This proceeding is continued."

In its order of November 2, 1977 the Commission rejected the petition for a rehearing and expressly found jurisdiction to require that tenants be billed only for the power they use.

Special Term found that sales necessarily were complete at the meter and, therefore, the Commission had no jurisdiction

as to subsequent diversions from the transmission line leading from the meter to the tenant's premises.

The determinative issues on this appeal are whether or not the Commission has jurisdiction as to the transmission of power beyond the utilities' location of a meter and whether or not the Commission exceeded its power by directing that tenants shall not be required to pay for service neither received by them nor intended by them to be purchased for the benefit of others.

Private electrical companies are protected in New York State from unlicensed competition and are limited to a "fair" return on their investment in the production of electricity. However, their monopolistic control of the desired service is in turn subjected to the regulatory powers of the Commission. As relevant to this proceeding, section 5 (subd 1, par [b]) of the Public Service Law provides as follows:

"§ 5. Jurisdiction, powers and duties of public service commission.

"1. The jurisdiction, supervision, powers and duties of the public service commission shall extend under this chapter:

"b. To the manufacture, conveying, transportation, sale or distribution of gas (natural or manufactured or mixture of both) and electricity for light, heat or power, to gas plants and to electric plants and to the persons or corporations owning, leasing or operating the same."

The most cursory examination of the statute reveals that the Commission has jurisdiction and power over the sale and distribution of electricity and there is no basis for the finding of Special Term that the "meter" is the point of sale or that the jurisdiction would end with the point of sale. To the extent that the order of September 15, 1977 determines there is no final sale until delivery of the electricity to the purchaser, there has been no showing that it exceeds in any way the power of the Commission or is otherwise arbitrary or irrational. The statutory obligations of the Commission are to insure "safe and adequate service" at "just and reasonable charges" (Public Service Law, § 65) and, in any event, there is no lack of rational basis for requiring that the "sales" occur upon delivery. It is well established that to some extent utilities are responsible for initially providing safe and accurate transmission of the product beyond metering devices (*Schmeer v Gas Light Co. of Syracuse,* 147 NY 529).

The foregoing discussion of jurisdiction demonstrates that by control of the point of sale there is also a rational basis for requiring that utilities only charge customers for the service received and/or intended by them to be purchased for the benefit of others. Accordingly, the utilities may not look to the customer to pay for diverted service once such diversion is discovered.

Based upon the power of the Commission to determine the point of sale and the liability of a tenant (purchaser) for the use of electricity, the further procedures for the correction of diversion and the collection of payment for diverted service are not so unrelated to the primary object of not charging the tenant for such items as to be unreasonable. While the conclusions of the Commission as to who is legally responsible for the payment of past diverted services are not binding on tenants or landlords, its determination of a fair charge for the service rendered is binding upon the utility.

The petitioner has not demonstrated that it is aggrieved by so much of the order which by incorporating "procedures" would require a utility to attempt to directly collect or assist a tenant in collecting the estimated charges for diverted service from the diverter or the landlord. Accordingly, we do not pass upon the merits of the contentions of the petitioner that such procedures constitute an unauthorized attempt to adjudicate a private dispute or otherwise protect rights not subject to Commission control (cf. *Matter of City of New York v Public Serv. Comm. of State of N. Y.,* 53 AD2d 164, affd 42 NY2d 916).

In sum, the utility has the sole control of the meters and any interference therewith is unauthorized. It is a relatively simple procedure for the utility to "pull" the meter to determine if lights and appliances other than those in the tenant's apartment are affected. Neither the landlord nor the tenant can carry out such procedure and, therefore, it is the obligation of the utility to make such test and advise the landlord and tenant accordingly. The wiring in the dwellings is under the control of and the responsibility of the landlord.

Having determined that the Public Service Commission has jurisdiction over the subject matter and that its determination has a rational basis, it should be confirmed.

The judgment should be reversed, on the law and the facts, with costs to the Public Service Commission, and the orders of the Commission confirmed.

GREENBLOTT, J. P., KANE, MAIN and MIKOLL, JJ., concur.

Judgment reversed, on the law and the facts, with costs to the Public Service Commission, and orders of the Commission confirmed.