■ In the Matter of LILLIAN MICHELSON, as Executrix of CARMELLA J. RUSSO and Another, Deceased, Appellant, v

STATE OF NEW YORK PUBLIC SERVICE COMMISSION et al., Respondents.—Harvey, J. Appeal from a judgment of the Supreme Court (Cholakis, J.), entered May 14, 1986 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Public Service Commission denying petitioner's request for a redetermination of certain utility charges.

Petitioner is the executrix of the estates of her parents, Carmella and Natale Russo, who died in 1983. In 1980, Natale Russo (hereinafter Russo) received gas bills from respondent Brooklyn Union Gas Company for services at a building which he rented to commercial and residential tenants. Russo provided gas heat to the tenants as part of the terms of the lease. Believing the bills reflected unusually high gas consumption in the commercial unit, Russo requested that the meter be checked for accuracy. A test conducted by Brooklyn Union, which was monitored by an employee of respondent Public Service Commission (hereinafter PSC), revealed that the meter was accurate. Russo continued to refuse payment of the bills and pursued various avenues of relief. A consumer arbitration conference was conducted by PSC and the informal arbitrator found in favor of Brooklyn Union.

In April 1983, following Russo's death, petitioner asserted at an informal hearing held by PSC that the large bills had been caused by the commercial tenant's diversion of gas. Despite these allegations, it was determined that Russo's estate was responsible for the gas bills. Brooklyn Union removed the commercial unit's meter in September 1984, allegedly causing interruption of residential service and damage to the property.

In May 1985, petitioner's request for a formal hearing regarding the billing for gas services was denied by PSC upon the ground that the issues raised did not warrant an evidentiary hearing. In its letter of denial, PSC stated that the meter had been tested and found accurate and that, even if the allegations of diversion by a tenant were meritorious, the landlord remained liable to Brooklyn Union since he controlled access to the pipes and meter. Petitioner then commenced the instant CPLR article 78 proceeding. Supreme Court confirmed the determination and this appeal ensued.

Since petitioner does not challenge the finding that the meter was accurate, the first issue to be addressed is whether PSC acted arbitrarily and irrationally in determining that Russo, as the landlord, was liable for gas which passed through the meter in his building, even if some of the gas was then diverted. Applying common-law principles, title to gas or

electricity passes at the point of sale which is the utility meter *(see, Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 94 Misc 2d 356, 358, *revd on other grounds* 66 AD2d 509, *affd* 49 NY2d 930). PSC has promulgated regulations, however, which provide that a tenant may be relieved from paying the cost of diverted services *(see,* 16 NYCRR 11.30-11.37). The language of the regulations, however, applies only to tenants and not to landlords. PSC justifies this distinction between tenants and landlords upon the ground that landlords generally maintain control over the area where the piping (or wires) and meters are located and, thus, have the ability to discover and correct diversions, while tenants do not. Indeed, Russo, as the landlord, in the case at bar, reserved the right to "enter into and upon said premises * * * at all reasonable hours for the purpose of examining the same". It is clear that Russo retained sufficient control over the premises so that he could have inspected for a possible diversion as soon as he suspected a problem and avoided the accrual of the large gas bills from which petitioner now seeks to be discharged. We thus find that PSC's determination that Russo was liable for the gas provided to his building is not arbitrary or irrational.

We are similarly unpersuaded by petitioner's contention that the distinction in the regulation between tenants and landlords violates equal protection. Unless a fundamental right or a suspect classification is at issue, a regulation will not be set aside on equal protection grounds unless it is patently arbitrary, bears no rational relationship to a legitimate government interest and no facts may reasonably be conceived to justify it *(Harris v McRae,* 448 US 297; *see, Maresca v Cuomo,* 64 NY2d 242, *appeal dismissed* 474 US 802; *Matter of Shattenkirk v Finnerty,* 97 AD2d 51, *affd* 62 NY2d 949). Since neither a fundamental right nor a suspect classification has been implicated, we apply the rational basis test. As has already been discussed, a rational basis has been articulated for the distinction between landlords and tenants in that landlords generally retain access to and control of a building's plumbing and wiring.

We do find merit, however, in petitioner's contention that Supreme Court should have considered her claim for damages allegedly caused by Brooklyn Union's forceful entry to remove the meter. Petitioner alleged that Brooklyn Union's action was taken without notice, resulted in the residential tenants being without gas for a day and caused damage which required repair of a steel door and the services of a plumber. Although these issues were not properly before the court in

the context of the article 78 proceeding, the court should have converted the claim for damages into a plenary action rather than dismissing it *(see,* CPLR 103 [c]; *Matter of Leisner v Bahou,* 97 AD2d 860, 861, *appeal dismissed* 61 NY2d 985, *cert denied* 469 US 1087).

Petitioner's remaining contentions have been considered and found meritless.

Judgment modified, on the law, without costs, by converting petitioner's claim for damages into proper form and remitting the matter to the Supreme Court for further proceedings not inconsistent herewith, and, as so modified, affirmed. Casey, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.