In the Matter of CHARLES SHATTENKIRK et al., Respondents, v MICHAEL FINNERTY, as Budget Director of the State of New York, Appellant, et al., Respondent.

Third Department, December 1, 1983

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Peter H. Schiff, Richard Rifkin* and *Alan W. Rubenstein* of counsel), for appellant.

*Hinman, Straub, Pigors & Manning (John J. Ciavardoni* and *William F. Sheehan* of counsel), for respondents.

OPINION OF THE COURT

MAHONEY, P. J.

Section 7 of chapter 460 of the Laws of 1982 authorized an 8% salary increase effective April 1, 1983 for positions designated management/confidential pursuant to article 14 of the Civil Service Law (see Civil Service Law, § 130, subd 1, par d). Petitioner Eugene Tashman holds a nonstatutory exempt position with a management/confidential salary grade of M-6. Petitioner Charles Shattenkirk holds a competitive class position classified as management/confidential with a salary grade of M-6. Petitioners did not receive the 8% increase because of Budget Bulletin D-1052 which was implemented by respondent Budget Director[*] pursuant to chapter 460 (§ 7, subd 10) of the Laws of 1982. That subdivision provides that, "Notwithstanding the foregoing provisions of this section, any increase in compensation provided by this section may be withheld in whole or in part from any officer or employee when in the opinion of the director of the budget, such increase is not warranted or is not appropriate." The budget bulletin directed that State employees in positions designated grades M-6 to M-8 and classified as management/confidential were to receive the scheduled salaried increase only to the extent that the

---

[*] Respondent Governor Mario Cuomo's motion that the proceeding be dismissed as to him was granted and has not been appealed.

increase would not elevate their salaries to the point where they were greater than 98% of their supervisor's salary (hereinafter referred to as the 98% rule). The bulletin also directed that all "exempt" employees in positions designated as management/confidential and earning more than $23,065 annually would not receive any of the scheduled salary increase. Petitioner Shattenkirk fell within the former category while petitioner Tashman fell within the latter. As a result, neither received his scheduled salary increase.

Petitioners brought a CPLR article 78 proceeding seeking to have Budget Bulletin D-1052 annulled on the grounds, *inter alia,* that it was based upon an unconstitutional delegation of legislative authority, that the bulletin violated State and Federal constitutional equal protection provisions since some management/confidential employees did receive the scheduled increase, and that the bulletin was an arbitrary and capricious exercise of administrative authority. Petitioners also sought to receive the salary increase retroactively to the date when it took effect.

Special Term determined that the Legislature validly delegated to respondent Budget Director the authority to withhold increases in salaries. However, Special Term found that the bulletin, insofar as it withheld salary increases to those who would earn in excess of 98% of their supervisor's earnings, was in violation of the equal protection clauses of both the Federal and State Constitutions. Special Term also found that respondent Budget Director had not been the one who decided to withhold the scheduled increases in salary to those "exempt" employees earning more than $23,065. Rather, Special Term determined that the decision had been made by respondent Governor Mario Cuomo. By finding that chapter 460 (§ 7, subd 10) of the Laws of 1982 authorized only respondent Budget Director and not respondent Governor Cuomo to make such a decision, Special Term found the bulletin in that respect to be in violation of the statute. In addition, Special Term awarded petitioners the scheduled salary increase retroactively and converted the proceeding to a declaratory judgment action. This appeal by respondent Budget Director ensued.

■ Petitioners' contention that chapter 460 (§ 7, subd 10) of the Laws of 1982 was an unconstitutional delegation of legislative authority is without merit. While the Legislature cannot pass on its law-making functions to other bodies, there is no constitutional prohibition against the delegation of power, with reasonable safeguards and standards, to an agency or commission to administer the law as enacted by the Legislature (*Matter of Levine v Whalen,* 39 NY2d 510, 515). Here, the statute authorized respondent Budget Director to withhold salary increases when, in his opinion, they were not *"warranted* or * * * not *appropriate"* (emphasis added). Again, we reject petitioners' contention that these words do not set forth a constitutionally permissible standard. Contrary to petitioners' view, findings of fact are not necessary to determine if the word "appropriate" is a permissible standard to guide the Budget Director's discretion. Findings of fact are not required when regulations are promulgated by an agency pursuant to a statutory delegation of power (see 2 NY Jur 2d, Administrative Law, § 143, pp 223-225). Since the statute under attack has a defined purpose, i.e., to withhold salary increases if the need is present, the word "appropriate" in this case is an adequate standard. Special Term was also correct in relying upon *Meyers v New York State Div. of Housing & Community Renewal* (36 AD2d 166) in determining that the word "warranted" was a sufficient standard. In *Meyers,* the court stated "that the only standard applicable to the municipalities is that the local governing body find that decontrol is 'warranted', without any other qualification" (*supra,* at p 170). Finally, on this point, we hold that petitioners' reliance upon *Rapp v Carey* (44 NY2d 157) and *Matter of County of Oneida v Berle* (49 NY2d 515) to support their argument that the words "appropriate" and "warranted" fail to provide adequate standards is misplaced. In *Rapp,* there was no express statutory authority for the Governor to promulgate a certain executive order and, in *Oneida,* the issue was whether the Budget Director could refuse to spend $7,000,000 appropriated by the Legislature. In that case, the court found that the statute did not confer statutory authority on the Budget Director to withhold any portion of the appropriation. In neither case were the actions taken authorized. Here, the

withholding of salary increases is specifically authorized. Therefore, we conclude that sufficient standards were set forth such that the delegation of legislative authority (L 1982, ch 460, § 7, subd 10) was in all respects constitutional.

■ We conclude, however, that Special Term erred in determining that the 98% rule violated the equal protection clauses of the Federal and State Constitutions. The equal protection clause of the Fourteenth Amendment of the Federal Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws". Section 11 of article I of the New York State Constitution states that, "No person shall be denied the equal protection of the laws of this state or any subdivision thereof." The breadth of the coverage afforded by the two Constitutions has been held to be equal (*Dorsey v Stuyvesant Town Corp.,* 299 NY 512, cert den 339 US 981). These provisions apply to controversies involving compensation (see *Matter of Abrams v Bronstein,* 33 NY2d 488). For equal protection purposes, the appropriate standard for judicial review of a regulation, absent a suspect classification, is that it be sustained unless it bears no rational relation to a legitimate government interest (*Frontiero v Richardson,* 411 US 677; *People v Whidden,* 51 NY2d 457, app dsmd 454 US 803).

Accordingly, the first step in determining whether Budget Bulletin D-1052 violates petitioners' rights to equal protection is to decide whether the 98% rule was promulgated pursuant to a legitimate State objective (*Matter of Abrams v Bronstein, supra*). Resolution of this issue depends on whether salary compression is a valid State objective. Special Term found it to be invalid. We disagree. Salary compression occurs when the Legislature enacts legislation which increases lower-level employee salaries but does not concomitantly enact legislation to increase the salaries of agency heads, with the result that lower-level employees' salaries are almost equal to, or higher than, those of their supervisors. Respondent correctly points out that budget bulletins had previously been implemented imposing a "95% rule" in 1974, a "99% rule" in 1977 and a "98% rule" in 1981. It has been held that when the Legislature, in using a term in a new statute, has before it a

settled administrative construction of the same term as it appeared in a prior statute dealing with the same subject matter, the Legislature must be deemed to have intended that the term should be given the same meaning in the new statute as it had been given by the prior administrative construction (see *McGowan v Mayor of City of N. Y.,* 53 NY2d 86, 94-95; *Matter of Abraham & Straus v Tully,* 47 NY2d 207, 214; *Koch v Dyson,* 85 AD2d 346, 361). Therefore, since the 1974, 1977 and 1981 rules were administratively construed as authorizing the Budget Director to withhold salary increases to deal with salary compression, a like construction must be accorded the present rule. Further, the Legislature was aware of salary compression in that the Governor, in a memorandum accompanying the most recent salary bill for legislative heads under section 169 of the Executive Law, discussed the problem of salary compression. Accordingly, we conclude that an attempt by legislative delegation to deal with this issue is a legitimate State objective.

We are not deflected from this view by Special Term's finding that withholding for salary compression reasons violated section 115 of the Civil Service Law. That statute states that it is "the policy of the state to provide equal pay for equal work". This statute does not mean that withholding for salary compression reasons is not a valid State objective. In *McCorkle v United States* (559 F2d 1258, cert den 434 US 1011), it was decided that subdivision (a) of section 3 of the Federal Pay Comparability Act of 1970 (US Code, tit 5, § 5308), which limited the pay of general schedule employees to an amount no higher than the salaries of executive schedule employees, did not violate a similar Federal statute which stated that "there be equal pay for substantially equal work". That court held that the ceiling on salaries furthered the Congressional purpose of establishing a logical relationship between pay and responsibility. We reach the same result here in finding a legitimate State purpose and objective behind the enactment of chapter 460 (§ 7, subd 10) of the Laws of 1982.

Since we have held that the government objective was valid, we must compare the classification to the objective to determine whether the classification rests " 'upon some

ground of difference having a fair and substantial relation'" to the object for which it is proposed (*Matter of Abrams v Bronstein,* 33 NY2d 488, 492-493, *supra*). An administrative regulation will be upheld as valid if it has a rational basis, that is, if it is not arbitrary and capricious (*Matter of Levine v Whalen, supra*). Petitioners' contention that the 98% rule was not rationally related to the government objective in that it only applies to 200 management/confidential employees in salary grades M-6 to M-8 while 12,300 management/confidential employees in the 26 salary grades of M/C-3 to M-5 received the salary increases, is without merit. While the sheer number of those in the lower grades who received salary increases, when juxtaposed to the number of employees in higher grades who did not, would appear to add weight to the maxim that an agency denies equal protection if it treats persons similarly situated differently (*Matter of Abrams v Bronstein, supra*), it is clear that the M-6 to M-8 employees and the M/C-3 to M-5 employees are not similarly situated. Petitioners, as M-6 to M-8 employees, are in large part upper-level managers who have a major role in formulating policy when they act in their managerial capacity and who assist and aid managerial employees when they act in their confidential capacity (Civil Service Law, § 201, subd 7, par [a]). Next, the statute authorizes the Budget Director to withhold salary increases under the 98% rule from "any" officer or employee. It has repeatedly been held that "the word 'any' means 'all' or 'every' and imports no limitation" (*Zion v Kurtz,* 50 NY2d 92, 104). Since we have determined that salary compression is a valid State objective, and since the legislative use of the word "any" in the statutory delegation imports no limitation as to how the Budget Director should carry out that State objective, we find his act of withholding the 8% salary increase for only the highest paid management/confidential employees to be rational and not, as found below, to be arbitrary and capricious or violative of the equal protection clauses of the Federal and State Constitutions. Further, in matters involving the State budget, equal protection does not require that all classifications be made with mathematical precision (*Matter of Tolub v Evans,* 58 NY2d 1, 8, app dsmd __ US __, 103 S Ct 1760). Nor does the principle of equal pay

for equal work mandate that such principle must be applied in all cases under any and all conditions (see *Gladstone v Board of Educ.*, 49 Misc 2d 344, affd 26 AD2d 838, affd 19 NY2d 1004, cert den 389 US 976).

■ We also conclude that Special Term erred in determining that respondent Budget Director, in withholding the 1983 salary increase from "exempt" employees earning more than $23,065, did not act in compliance with the provisions of chapter 460 (§ 7, subd 10) of the Laws of 1982. Special Term found that since Budget Bulletin D-1052 states that "[t]he Governor ha[d] determined" that exempt employees would not receive their scheduled raise, respondent Budget Director had failed to exercise his independent judgment. We disagree. Section 180 of the Executive Law states that, "It shall be the duty of the director of the budget to assist the governor in his duties under the constitution and laws of the state respecting the formulation of the budget". It follows, therefore, that the budget bulletin was merely a reflection of the relationship with the Governor and that respondent Budget Director had not abdicated any responsibility that the Legislature had delegated to him. If he had disagreed with the Governor, the legislative delegation would have permitted the Budget Director to withhold the budget bulletin. Finally, on this point, it has been held that in budgetary matters the Budget Director acts as agent for the Governor (*Matter of County of Oneida v Berle*, 49 NY2d 515, 519, *supra*).

Lastly, we conclude that Special Term erred in holding that respondent Budget Director's withholding salary increases from exempt employees violated their rights to equal protection. While Special Term did not expressly address the issue of whether withholding salary increases to exempt employees was rationally related to a legitimate government objective, it did state that, "There is a likelihood that under judicial scrutiny the withholding of a salary increase to these employees would be violative of the equal protection clause". It appears that the finding is premised on petitioners' contention that the withholding of salary increases to exempt employees saves less than one half of 1% of the State budget deficit, which, according to petitioners, is ineffective economizing. We are constrained,

however, to point out that the legitimate State objective in authorizing respondent Budget Director to withhold the 8% salary increase from exempt employees earning in excess of $23,065 was directly related to the fiscal well-being of the State. The legislative delegation to the Budget Director was only a part of a State policy to reduce the over-all cost of government. During this time period, the State found it necessary to impose a hiring freeze, implement an attrition plan, lay off employees and provide for an early retirement program, all in furtherance of the policy and necessitated by fiscal restraint imposed by a projected large budget deficit. It is thus clear that the challenged action is rationally related to a legitimate State purpose. Where, as here, we are concerned with the allocation of the State's limited resources, the rational basis test is applied to equal protection challenges to classifications (see *Matter of Tolub v Evans,* 58 NY2d 1, 8, *supra*). Under this test, a classification need only have a rational relationship to a legitimate State interest to be sustained.

A regulatory scheme need not, as petitioners contend, address every exception to a rule that is rationally related to a legitimate State interest so as to maximize the effects of such a scheme. Since we are of the view that respondent Budget Director's decision to withhold the 1983 8% salary increases from upper-level exempt employees, as part of a series of stringent measures relative to the State's work force, had a rational basis directly related to a State objective, we cannot condemn such a decision merely because it did not produce the budgetary savings originally expected. The equal protection clause does not require a State officer to choose between attacking every aspect of a problem or not attacking the problem at all (see *New Orleans v Dukes,* 427 US 297, 305).

The judgment should be modified, on the law, without costs, by vacating decretal paragraphs three through six and substituting therefor a declaration that Budget Bulletin D-1052 is not violative of any of the constitutional or statutory provisions raised by petitioners, and, as so modified, affirmed.

SWEENEY, WEISS and LEVINE, JJ., concur; CASEY, J., not taking part.

Judgment modified, on the law, without costs, by vacating decretal paragraphs three through six and substituting therefor a declaration that Budget Bulletin D-1052 is not violative of any of the constitutional or statutory provisions raised by petitioners, and, as so modified, affirmed.