OPINION OF THE COURT
Harold J. Hughes, J.
Petitioners seek a judgment (1) annulling a resolution of the Board of Directors of the New York State Environmental Facilities Corporation (EFC) dated January 23, 1984 which rejected petitioners’ application for industrial revenue bond financing of the costs of the remedial project at the Hyde Park Landfill and (2) directing respondent to approve the application.
Respondent is a public benefit corporation empowered to issue tax exempt special obligation industrial revenue bonds and to lend the proceeds of the sales of such bonds to private corporations to finance environmental projects. On April 15, 1983 petitioners Occidental Chemical Corporation and Occidental Chemical Properties Corporation (Occidental) applied for $20,000,000 in industrial revenue bond financing for the costs of the remedial project at Occidental’s Hyde Park Landfill. The Hyde Park Landfill is a 16-acre parcel located in the Town of Niagara, New York, at which chemical wastes had been buried during a 20-year period ending in 1974, when the site was closed. Commencing in 1975, Occidental voluntarily took steps to attempt to prevent migration of the chemicals from the landfill into the surrounding environment, including the ground and surface waters. Dissatisfied with Occidental’s effort, the Federal Environmental Protection Agency initiated proceedings against Occidental in December of 1979 in the United States District Court for the Western District of New York based upon alleged violations of the Resource *1048 Conservation and Recovery Act of 1976, the Clean Water Act of 1977, and the Rivers and Harbors Act. The State of New York eventually joined that litigation as a plaintiff and asserted claims sounding in public nuisance and violation of the Environmental Conservation Law. The parties reached a voluntary settlement which was approved in a written decision by District Court Judge John T. Curtin, dated April 30, 1982.
Under the terms of Judge Curtin’s order, Occidental must prevent migration of contaminated ground water from the landfill and clean up the existing contamination in the landfill and neighboring area. Pursuant to the terms of the order, Occidental must complete this remediation project by a fixed date irrespective of whether it obtains the financial assistance sought in this litigation. Throughout the Federal court proceeding, Occidental never admitted being in violation of any New York State legislative enactments concerning prevention of pollution of land, air and waters. The judgment contains an express disclaimer, “neither this judgment nor any part hereof shall constitute an admission of law or fact or evidence of same, nor of any violation of any law or regulation.”
Upon receipt of Occidental’s application EFC held a public hearing and by resolution No. 901 denied the application. EFC’s board of directors noted that Occidental had undertaken the remedial procedures pursuant to an order of the United States District Court. The resolution lists various reasons for the denial including: (1) the proposed financing would impose additional indirect costs upon the State of New York not contemplated at the time it agreed to settle the action against Occidental; (2) Occidental has the financial ability to complete the court-ordered project without EFC financing; and (3) the testimony at the public hearing and the extensive information in the record demonstrates that the financing was inappropriate. EFC denied the application as not being in the public interest.
Occidental here advances four causes of action as follows: (1) EFC’s rejection of the application is directly contrary to its legislative mandate and in total disregard of the language of the enabling statute; (2) EFC never promulgated regulations interpreting the “public interest” *1049 standard and denied Occidental’s application without any guidelines or standards against which denials of applications for financing can be measured; (3) EEC’s denial was arbitrary, capricious and discriminatory since it had in the past approved similar applications for financing; and (4) EEC violated Occidental’s equal protection and due process rights by the denial.
Turning to the first cause of action, the petition alleges at paragraph 28 as follows: “The Legislature has expressly given EEC authority to provide industrial revenue bond financing in order to reduce capital costs expended by industry as the result of ‘enactments by the Legislature regulating, enforcing and otherwise controlling the effect of and preventing the pollution of land, air and water of the State.’ ”
The answer admits the foregoing allegation. Paragraph 30 of the petition alleges that this remedial project is eligible for EEC financing. The answer specifically denies that allegation. Thus, the issue presented is whether EEC correctly determined that this project was not of the type for which the Legislature intended EEC to provide financial assistance. The petitioners correctly point out in paragraph 28 of the petition the Legislature gave EEC authority to issue industrial revenue bonds in order to reduce the capital costs incurred by industry as the result of enactments by the New York State Legislature regulating the environment. The question here is whether the costs being incurred by Occidental resulted from any enactments of the New York State Legislature. It does not appear so.
The resolution denying the application correctly notes that Occidental undertook the remedial project as the result of a consent order issued by the United States District Court for the Western District of New York. This was one of the reasons for the denial of the application. The board decided that it was not in the public interest for this State to lend financial assistance to corporations incurring capital costs as the result of environmental clean-up projects resulting from litigation. This determination is consistent with the stated view of the Legislature (recognized by petitioner) that industrial revenue bond financing should only be available to reduce capital costs incurred by *1050 a business as the result of enactments of the Legislature regulating pollution (L 1974, ch 1046, § 1). The Legislature determined that it was in the interest of the State to provide a means of raising capital for those businesses seeking in good faith to comply with the statutes and regulations regulating pollution. Occidental’s application does not fall within those parameters. Occidental is not incurring capital costs as a result of any enactment of the New York State Legislature,* but rather solely because it consented to do so pursuant to the order of a Federal Judge. EFC’s determination that this application did not qualify is rational.
Turning to the second cause of action, section 1285-b of the Public Authorities Law authorizes EFC to deny an application for funding “for any reason it deems appropriate in the public interest”. Petitioners argue that even though empowered to promulgate regulations interpreting the public interest standard, respondent has failed to do so. Petitioners argue that by this inaction EFC has failed to articulate any objective standards against which this denial can be measured. At paragraph 43 of the petition, Occidental alleges, “If EFC is to carve out exceptions to the criteria set forth in the statute, it must do so by promulgating rules and regulations”. The foregoing statement evinces a fundamental misunderstanding on petitioner’s part as to what EFC did. EFC did not carve out an exception to the criteria as set forth in the statute, but instead applied the public interest standard set forth in the statute. It need not promulgate rules and regulations in order to do so. The Legislature may confer discretion upon an administrative agency and in the enabling statute itself provide the standard to be followed by the agency in exercising the discretion (Matter of Levine v Whalen, 39 NY2d 510). Even though given the authority to promulgate regulations, an administrative body need not do so and may instead apply the statutory standard in making its determinations. This is clearly demonstrated in Matter of Organization to Assure Servs. for Exceptional Students v Ambach (105 Misc 2d 269, revd 82 AD2d 993, mod 56 NY2d 518).
*1051 In that case, the Commissioner of Education was charged by law with the duty of determining the allowable tuition rate for private schools providing educational services to handicapped children. The pertinent sections of the Education Law set forth the standard to be followed by the Commissioner. Section 4405 (subd 3> par e) of the Education Law provides: “The commissioner of education shall, annually, determine the allowable tuition rate for each private school for the purposes of this subdivision pursuant to his rules and regulations.” The Commissioner adopted a 4.5% across-the-board ceiling on all staff salary increases and refused to allow reimbursement for any salary raises in excess of 4.5%. No rule or regulation was ever formally adopted setting forth this salary ceiling. The private schools brought a CPLR article 78 proceeding charging arbitrary and capricious conduct due to the failure of the Commissioner of Education to enact the salary ceiling as a formal regulation. This court rejected that argument. The Appellate Division reversed, stating that the Commissioner acted wrongfully in implementing an across-the-board salary limitation without adopting a formal regulation. The Court of Appeals reversed the Appellate Division, stating that while the Commissioner of Education had the authority to enact regulations, he was not required to do so and could rely upon the statutory standards in establishing the reimbursement rates. Applying that rationale to this case, it is apparent that the board of directors of EEC need not adopt regulations defining the public interest standard if the enabling legislation sets forth a statutory standard sufficient to permit judicial review.
Here, the statutory standard is that “[t]he corporation may deny such application for any reason it deems appropriate in the public interest” (Public Authorities Law, § 1285-b). Of necessity the language chosen by the Legislature affords the administrative body great flexibility since each application must be addressed upon its own merits and it would be impractical to attempt to codify in advance what the public interest might be in a particular case. The Third Department has held that the word “appropriate” sets forth an adequate standard to review administrative actions under a statute specifically authorizing the *1052 withholding of a benefit (Matter of Shattenkirk v Finnerty, 97 AD2d 51, 54, 55, affd 62 NY2d 949). The second cause of action set forth in the petition lacks merit.
The third claim set forth in the petition asserts that EEC’s action was arbitrary because it is the only application that has ever been rejected by EEC. This claim is patently frivolous. EEC does not have to say “yes” to every applicant. The Legislature has given it specific authority to reject applications (Public Authorities Law, § 1285-b). As long as a rational basis accompanies the rejection, it will be upheld. It has been determined earlier in this decision that the rejection of an application as not appropriate in the public interest when the applicant has required the State to take it to court in order to enforce this State’s laws protecting the environment is rational.
The fourth claim asserted in the petition asserts that EEC’s action in denying this application when in the past it has approved similar applications is arbitrary and violates petitioners’ equal protection and due process rights. This claim is premised upon petitioners’ argument that the General Electric Company gained financing from EEC for a remediation project upon facts indistinguishable from those present here. The record does not support this claim. Exhibit F to the petition establishes that the New York State Department of Environmental Conservation and the General Electric Company entered into a stipulation whereby General Electric voluntarily agreed to a remedial plan to clean up seven chemical dumpsites. This stipulation was reached without court action. It was the very lack of litigation that prompted then Governor Carey to commend both the General Electric Company and the Department of Environmental Conservation for the method by which the remedial plan was obtained (see enclosed copy of an unreported decision of this court in State of New York v General Elec. Co., Supreme Ct, Albany County, June 10, 1983, Hughes, J., mod 103 AD2d 985). Petitioner cannot in good faith compare the General Electric Company case with this one where Occidental had to be hailed into court by both the Federal and State Governments before it would agree to a plan to clean up its chemical dumpsite. This court reiterates that it is in the public interest of the *1053 citizens of this State for the respondent to provide an incentive through its bond financing to those entities that voluntarily seek to comply with our environmental laws and to deny that benefit to those recalcitrant companies that will only obey the law after the taxpayers have been put to the additional expense of litigation. Finally, even if there had been prior approved applications similar to petitioners, that would not require a judgment in petitioners’ favor since “[a]n administrative body * * * may correct its [prior] erroneous interpretation of the law” (Matter of Liberty Coaches v State Tax Comm., 79 AD2d 775-776).
The petition will be dismissed, without costs.

 Indeed, throughout the Federal court litigation and in this proceeding Occidental continues to maintain that it has never been in violation of any New York State statutes or regulations prohibiting pollution.