OPINION OF THE COURT
John G. Connor, J.
Petitioners challenge the legality of certain emergency regulations promulgated by respondent requiring sponsors of condominium and cooperative housing ventures to disclose the presence of asbestos containing material (referred to as ACM by the parties), and to take certain remedial measures to correct any hazard created by the ACM. General Business Law § 352-e is the operative provision mandating that any person or entity offering interests in real estate must make various disclosures relative to the venture. This statute is part of General Business Law article 23-A, also known as the Martin Act, originally implemented as New York’s "blue sky” law requiring disclosure relative to the marketing of securities (see, Kaufmann, Practice Commentary, McKinney’s Cons Laws of NY, Book 19, General Business Law art 23-A, p 5). The regulation of condominium and cooperative ownership offerings has become a major area for regulation under the Martin Act (see, Goldsmith, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 23-A, p 32).
Under the regulatory scheme, the Attorney-General is charged with the responsibility to ensure that each offering statement or prospectus for the sale of securities representing interests in realty comply with the legislatively mandated disclosure (General Business Law § 352-e [1] [b]; [2]). General Business Law § 352-e (6) empowers the Attorney-General to promulgate rules and regulations to implement the legislative mandate.
Pursuant to that regulatory authority, the Attorney-General promulgated certain emergency regulations concerning the disclosure of ACM in any building which a sponsor proposes to convert from residential rentals to cooperative or condominium forms of ownership. Specifically, the emergency regulations amend 13 NYCRR parts 18, 20 and 21 by adding new provisions dealing with ACM disclosure and remedial measures. The regulations are codified at 13 NYCRR 18.7 (aa); *576 20.7 (z); 21.7 (z) (the emergency regulations appear in 8 NY St Reg, issue 34, at 20-25 [Aug. 27, 1986]).*
The three emergency regulations at issue are virtually identical. Essentially, the regulations require the sponsor of a cooperative or condominium offering to "have a person who is qualified to render an opinion on asbestos to prepare a report” disclosing the location, amount and concentration of any ACM. Further, the report must provide recommendations for dealing with every type of ACM identified by "removal, enclosure, encapsulation, or leaving undisturbed.” The report must disclose how the recommended remedial measure should be implemented and "a recommended protocol for the future handling and maintenance of asbestos which will remain in the building” (13 NYCRR 18.7 [aa] [1]; 20.7 [z] [1]; 21.7 [z] [1]).
Beyond the disclosure outlined above, the regulations also require that the sponsor affirmatively state in the offering plan that either himself, or that the entity in control of the building, will expeditiously carry out the remedial measures recommended in the asbestos report. Also, the offering plan must state that the ACM remaining in the building will be removed or treated as necessary in the future (13 NYCRR 18.7 [aa] [1] [v]; 20.7 [z] [1] [v]; 21.7 [z] [1] [v]). In the event that a closing takes place prior to completion of the remedial work recommended in the asbestos report, the sponsor must "place in escrow a sum of money sufficient to pay for said work, the amount to be determined by a person qualified to render an opinion on asbestos, but in no event less than $2,500 per unit” (13 NYCRR 18.7 [aa] [2] [iii]; 20.7 [z] [2] [iii]; 21.7 [z] [2] [iii]).
Petitioners commenced this proceeding pursuant to CPLR article 78 challenging the legality of the emergency regulations on several grounds. Petitioners contend that the emergency regulations were not properly promulgated in compliance with the State Administrative Procedure Act, and that the regulations are in excess of the Attorney-General’s authority conferred upon him by the Legislature. Also, they assert that the regulations deny petitioners equal protection of the laws and that the regulations contain an improper delegation *577 of the Attorney-General’s authority to the so-called "person who is qualified to render an opinion on asbestos” (13 NYCRR 18.7 [aa] [1]; 20.7 [z] [1]; 21.7 [z] [1]). Initially, petitioners sought a preliminary injunction from this court and many of the papers are drafted with respect to that intention. In an effort to achieve an expedient resolution, petitioners relinquished their request for injunctive relief considering this court’s willingness to make a prompt disposition on the merits. Accordingly, the application for a preliminary injunction shall not be addressed and this court shall reach the merits of petitioners’ claims directly.
At the outset, the form of this proceeding must be addressed. Petitioners primarily challenge the legality of the regulations themselves, rather than any particular action taken by the Attorney-General. Since petitioners seek to have this court pass upon the validity of the regulations themselves, this article 78 proceeding must be converted to an action for declaratory judgment (CPLR 103 [c]; see, Matter of New York State Coalition of Public Employers v New York State Dept. of Labor, 89 AD2d 283, 284, n, affd 60 NY2d 789; see also, 92-07 Rest. v New York State Liq. Auth., 80 AD2d 603, 604, appeal withdrawn 54 NY2d 834).
The court finds that the emergency regulations are not invalid as violative of the procedures required by the State Administrative Procedure Act. With the exception of failing to state the termination date for the emergency regulations in the notice of emergency adoption (State Administrative Procedure Act § 202 [6] [d] [v]), the Attorney-General complied with statutory requirements for the promulgation of the emergency regulations. As to the failure to state a termination date, the Attorney-General aptly points out that by statute the emergency regulations expired 60 days after the August 11, 1986 effective date (State Administrative Procedure Act § 202 [6] [b]), since this is not the type of regulation for which the automatic expiration may be excused (see, State Administrative Procedure Act § 202 [6] [c]). While compliance with the letter of the law by the Attorney-General is surely advisable and preferable, this court cannot find that the omission of a termination date which, in this instance, is statutorily established rises to the level of error which should nullify the entire regulatory scheme developed to control asbestos disclosure relative to condominium and cooperative housing offerings.
Petitioners’ constitutional arguments based upon equal pro *578 tection and the alleged improper delegation of power by the Attorney-General to a private individual are also unpersuasive. The equal protection argument simply fails on its face. General Business Law § 352-e and these emergency regulations promulgated thereunder clearly treat all similarly situated individuals, i.e., sponsors of offering plans for condominiums and cooperative housing ventures, equally (see, Matter of Shattenkirk v Finnerty, 97 AD2d 51, 57, affd 62 NY2d 949; 20 NY Jur 2d, Constitutional Law, § 357 [1982]). Therefore, no violation of petitioners’ rights to equal protection exists.
The emergency regulatory requirement that a "person who is qualified to render an opinion on asbestos” (13 NYCRR 18.7 [aa] [1]; 20.7 [z] [1]; 21.7 [z] [1]) prepare the asbestos report, which includes recommendations as to measures for removing or treating the ACM, does not constitute an improper delegation of authority by the Attorney-General to a private person. The regulatory structure is such that the asbestos report is a required part of the offering plan. That plan, in its entirety, is then subject to the Attorney-General’s scrutiny before it is accepted for filing (General Business Law § 352-e [2]). Accordingly, the asbestos report drafted by the qualified person and submitted as part of the entire offering plan is subject to the review of the Attorney-General to ensure that it meets the regulatory requirements. Since the Attorney-General has authority to accept or reject the asbestos report, the final decision-making power rests with him and is not improperly delegated to the person drafting the asbestos report.
Petitioners’ remaining contention is that the emergency regulations are in excess of the Attorney-General’s authority pursuant to General Business Law § 352-e (6). The primary purpose of section 352-e is informational, to provide investors with the necessary and material facts upon which to base a reasoned decision of whether to participate in the real estate venture being offered (Matter of Whalen v Lefkowitz, 36 NY2d 75, 78; Matter of 44 W. 96th St. Assoc. v Abrams, 85 AD2d 563, 564, appeal discontinued 56 NY2d 649). Further, the statutory requirements are intended to protect the investing public from fraud through the disclosure requirements (People v Lexington 61st Assoc., 38 NY2d 588, 595). The statute should be broadly construed and flexibly interpreted to effectuate its purposes (All Seasons Resorts v Abrams, 109 AD2d 189, 192).
The Martin Act is also remedial in nature since the Attorney-General is empowered to investigate and institute legal actions against any sponsor which fails to properly disclose *579 material facts or employs fraudulent tactics (see, People v Lexington 61st Assoc., supra; State of New York v 820 Assoc., 116 Misc 2d 901). As administrator of the statute, the Attorney-General’s interpretation and views as to necessary regulations should be given great weight (see, De Christoforo v Shore Ridge Assoc., 126 Misc 2d 339, 340).
The benefits of asbestos disclosure are obvious, especially considering the residential setting in question here and the fact that exposure to asbestos can be extremely hazardous to humans. Also, common sense dictates that the presence of asbestos in a building will necessarily be a major factor for a prospective condominium or cooperative housing investor to consider. Not only would the potential health hazard be a consideration, but the presence of asbestos would undoubtedly affect the market value of an interest in such a real estate venture. The asbestos disclosure requirements imposed by the Attorney-General’s emergency regulations (13 NYCRR 18.7 [aa]; 20.7 [z]; 21.7 [z]) are, therefore, entirely consistent with his powers and the salutary purposes of the statute. Also, the Attorney-General has the remedial powers already structured within the Martin Act to enforce the asbestos disclosure requirements and prohibit any sponsor from offering a condominium or cooperative plan which is founded upon insufficient disclosure or fraudulent practices to evade those regulations.
The further remedial measures which the Attorney-General has imposed within the emergency regulations are, however, improper as in excess of his statutory authority under the Martin Act. Specifically, the regulatory requirements that a sponsor, in effect, secure the implementation of recommended asbestos removal or treatment (13 NYCRR 18.7 [aa] [1] [v]; 20.7 [z] [1] [v]; 21.7 [z] [1] [v]) and place in escrow no less than $2,500 in situations where the asbestos removal or treatment has not been completed before a closing on the sale (13 NYCRR 18.7 [aa] [2] [iii]; 20.7 [z] [2] [iii]; 21.7 [z] [2] [iii]) go beyond the informational disclosure purposes of the statute. The Attorney-General, of course, cannot act in excess of the statute which he is authorized to implement (General Business Law § 352-e [6]) since that would be tantamount to an usurpation of the legislative function in violation of the NY Constitution, article III, § 1. The Attorney-General may properly implement regulations to achieve farreaching disclosure under the Martin Act since the Legislature has provided sufficient guidelines for the delegation of that authority (see, General Business Law § 352-e [1] [b]; Matter of Shattenkirk v *580 Finnerty, 97 AD2d 51, affd 62 NY2d 949, supra). Within that delegation of authority is the requirement that the offering statement include a description of the building, which the Attorney-General has construed to require many disclosures as to the structure including, now, the presence of ACM and how it should be handled.
The statute, however, in no way authorizes the Attorney-General to require a sponsor to provide for the correction of building defects, hazards or deficiencies as a part of the offering plan. This limitation of the statute was recognized by a court in upholding a local law requiring that the sponsor list all building code violations, and provide an escrowed security fund for the correction of the violations, after the offering plan was filed with the Attorney-General (Council for Owner Occupied Hous. v Koch, 119 Misc 2d 241). The Attorney-General has improperly ventured beyond his statutory authority to require disclosure of the condition of a building by requiring actual corrective measures to be undertaken as part of the offering plan filed under the Martin Act.
In view of the partial invalidity of the regulations as determined by this court, the invalid provisions shall be severed from those provisions which are valid. The court undertakes the severance of the regulations since there is a general legislative intent of severability evidenced in the Martin Act (General Business Law § 359-b), and because the valid portions of the regulations are not inextricably intertwined with other provisions (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 150).
The following language, which is identical in both 13 NYCRR 18.7 (aa) (1) (v) and 13 NYCRR 21.7 (z) (1) (v), shall be stricken: "In addition, the offering plan must state that the recommendations of the asbestos report will be expeditiously carried out by the sponsor if the closing has not occurred, or the apartment corporation if the closing has occurred but the sponsor is in control, and that it will be the responsibility of the apartment corporation to monitor and, whenever necessary, to treat or remove ACM which remains in the building(s) after the conversion to a cooperative.” The corresponding provision to be stricken from 13 NYCRR 20.7 (z) (1) is as follows: "In addition, the offering plan must state that the recommendations of the asbestos report will be expeditiously carried out by the sponsor if the closing has not occurred, or the condominium Board of Managers, if the closing has occurred but the sponsor is in control of the Board of Managers, *581 and that it will be the responsibility of the condominium to monitor and, whenever necessary, to treat or remove ACM which remains in the building(s) after the conversion to a cooperative.” Finally, the language common to all three and contained in 13 NYCRR 18.7 (aa) (2) (iii); 20.7 (z) (2) (iii); 21.7 (z) (2) which must be stricken is as follows: "If any closings take place prior to the completion of asbestos removal and treatment work, sponsor shall place in escrow a sum of money sufficient to pay for said work, the amount to be determined by a person qualified to render an opinion on asbestos, but in no event less than $2,500 per unit.”

 It is noted that petitioners seem primarily concerned with conversions of occupied residential rental structures to cooperative or condominium forms of ownership; yet 13 NYCRR parts 20, 21 regulate new construction as well as vacant buildings. Petitioners do, however, challenge all of the emergency regulations. There is no argument as to petitioners’ standing to challenge all of the emergency regulations at issue and this court shall address the legality of all of those regulations.