[649 NYS2d 91]

In the Matter of LEV PUKIN et al., Appellants, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents.

Third Department, October 31, 1996

## APPEARANCES OF COUNSEL

*Polatsek & Sclafani,* New York City *(Brian J. Isaac [Pollack, Pollack, Isaac & De Cicco],* and *Leonard A. Sclafani* of counsel), for appellants.

*Dennis C. Vacco, Attorney-General,* Albany *(Lew A. Millenbach* and *Nancy A. Spiegel* of counsel), for respondents.

### OPINION OF THE COURT

PETERS, J.

The sole issue raised on this appeal is whether respondent Department of Health (hereinafter DOH) had a rational basis for promulgating 10 NYCRR 405.4 (f) (1) (ii) *(a)* which prohibits graduates of foreign medical schools from performing their residencies at New York hospitals if the clinical component of their medical education included more than 12 weeks of clinical clerkships in a country other than the country in which the medical school is located.

Petitioner Lev Pukin received his postgraduate medical education at Ross University School of Medicine (hereinafter Ross) which operated a "split campus" program in Portsmouth, Dominica.[1] After completing his coursework in basic sciences, Pukin began what was ultimately 90 weeks of clinical coursework at medical hospitals located in the United States. After passing the requisite medical licensing exams and having graduated from Ross, Pukin sought to become a resident physician in New York.

In October 1994, Pukin applied to Wyckoff Heights Medical Center (hereinafter Wyckoff) for admission to its residency program in the field of family practice.[2] When Pukin's application was rejected by Wyckoff on November 23, 1994, it was alleged that the sole basis for such rejection was the preclusion detailed in 10 NYCRR 405.4 (f) (1) (ii) *(a)* since he received more than 12 weeks of clinical training in a foreign country.[3]

This proceeding was thereafter commenced to invalidate 10 NYCRR 405.4 (f) as arbitrary and capricious. Although Supreme Court dismissed the petition, finding the regulation rationally based in both its promulgation and application, in the absence of a clear indication that the action was properly converted to one seeking a declaratory judgment, we shall do

---

1. The practice of the Caribbean medical schools to send their students abroad to pursue their clinical coursework is what has been termed a "split campus" program.

2. It is undisputed that the residency program at Wyckoff is approved by the Department of Education as suitable for postgraduate training.

3. While there exists an exception for graduates of foreign medical schools which have been approved for clinical clerkships in New York by the Department of Education (*see,* 10 NYCRR 405.4 [f] [1] [ii] *[b]; see also,* 8 NYCRR 60.2 [c] [3]), Ross was twice rejected for such approval.

so here (*see*, CPLR 103 [c]; *cf.*, *Matter of Smith Corona Corp. v Village of Groton*, 221 AD2d 707).

Recognizing that "an administrative regulation will be upheld only if it has a rational basis, and is not unreasonable, arbitrary or capricious * * * [with] [a]dministrative rules * * * not judicially reviewed pro forma in a vacuum, but * * * scrutinized for genuine reasonableness and rationality in the specific context" (*New York State Assn. of Counties v Axelrod*, 78 NY2d 158, 166), we affirm the judgment of Supreme Court in its entirety.

The February 1986 Report of the New York State Commission on Graduate Medical Education, specifically addressing the adequacy of the training received from "split campus" schools such as Ross, coupled with the affidavit of Frederick Heigel, Director of the Bureau of Hospital Services for the Department of Health, and that of Thomas Monahan, Executive Secretary to the New York State Board for Medicine, reveals that the instant regulation was founded on a rational basis since such schools present, by virtue of their method of training, a particularly high risk of graduating students with substandard clinical training due to a lack of supervision and evaluative data generated by either the hospital personnel or anyone related to the medical school. Moreover, since the regulation at issue targets an acute public safety concern by focusing on patient care in hospitals located in New York, we further conclude that it is rational in its application (*see*, *supra*). Acknowledging the contentions made by petitioner that the regulation is so limited in scope to target only "split campus" schools, we hold that "[a] regulatory scheme need not * * * address every exception to a rule that is rationally related to a legitimate State interest so as to maximize the effects of such a scheme" (*Matter of Shattenkirk v Finnerty*, 97 AD2d 51, 59, *affd* 62 NY2d 949). Accordingly, we uphold its promulgation and declare that 10 NYCRR 405.4 (f) has not been shown to be invalid (*see*, *Matter of Bates v Toia*, 45 NY2d 460, 465).

Mikoll, J. P., Crew III, Yesawich Jr. and Carpinello, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by converting the matter to a declaratory judgment action and declaring that 10 NYCRR 405.4 (f) has not been shown to be invalid, and, as so modified, affirmed.