[9 NE3d 903, 986 NYS2d 408]

In the Matter of Subway Surface Supervisors Association, Respondent, v New York City Transit Authority, Appellant.

Argued February 12, 2014; decided April 8, 2014

## APPEARANCES OF COUNSEL

*Office of the General Counsel, New York City Transit Authority*, Brooklyn (*Robert K. Drinan* and *Richard Schoolman* of counsel), for appellant.

*Law Office of Stuart Salles*, New York City (*Gail M. Blasie* and *Stuart Salles* of counsel), for respondent.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be reversed, with costs, the motion to dismiss the petition granted, and the certified question answered in the negative.

Petitioner Subway Surface Supervisors Association is a labor union that represents employees working under the title Station Supervisor Level I (SS-I). It commenced this special proceeding against the New York City Transit Authority (TA) asserting that its members were being paid a lower base salary than their claimed counterparts, Station Supervisor Level II (SS-II),[1] for the same type of work. The sole allegation in the petition was that the TA violated Civil Service Law § 61 (2), prohibiting out-of-title work.

The TA moved to dismiss the petition on, among other grounds, failure to state a cause of action. In response, the Union abandoned its section 61 (2) claim and opposed the TA's motion on new, unpleaded theories, that the TA's conduct violated Civil Service Law § 115 and the Equal Protection Clauses of the New York and United States Constitutions.

Supreme Court deemed the section 61 (2) claim abandoned and, despite the fact that the Union failed to move for leave to replead or to amend its petition to allege the new claims, concluded that the petition stated a "potential" section 115 violation, but that "a factual dispute" remained concerning whether SS-Is and SS-IIs performed the same duties (2010 NY Slip Op 33912[U], *10 [Sup Ct, NY County 2010]). It referred the disputed issue to a special referee for a hearing, but before that hearing could be held Supreme Court granted the TA leave to appeal to the Appellate Division (2011 NY Slip Op 30132[U] [Sup Ct, NY County 2011]).

A divided Appellate Division affirmed. The majority found that the petition alleged viable Civil Service Law § 115 and equal protection claims (102 AD3d 532, 534-536 [1st Dept

---

1. SS-IIs are represented by a different labor union.

2013]). The dissenting Justices would have dismissed the petition for failure to state a cause of action because, in their view, section 115 enunciated only a state policy and did not confer upon state courts jurisdiction to enforce that policy (*id.* at 536-537). They would have found the Union's Equal Protection Clause arguments to be without merit (*id.* at 538-539). The Appellate Division granted the TA leave to this Court on the certified question whether the order of Supreme Court as affirmed by the Appellate Division was properly made (2013 NY Slip Op 74624[U] [1st Dept 2013]).

Civil Service Law article VIII, "Classification and Compensation of State Employees," contains three titles, the first of which (title A), entitled, "Classification and Allocation of Positions," begins with section 115, "Policy of the state," which provides:

> "In order to attract unusual merit and ability to the service of the state of New York, to stimulate higher efficiency among the personnel, to provide skilled leadership in administrative departments, to reward merit and to insure to the people and the taxpayers of the state of New York the highest return in services for the necessary costs of government, it is hereby declared to be the policy of the state to provide equal pay for equal work, and regular increases in pay in proper proportion to increase of ability, increase of output and increase of equality of work demonstrated in service."[2]

Courts of this State have routinely interpreted section 115 and its predecessor, the nearly identically-worded former Civil Service Law § 37, as merely enunciating a policy, conferring no jurisdiction on a court to enforce what is simply that—a statement of policy (*see Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v State of N.Y. Unified Ct. Sys.*, 35 AD3d 1008, 1010 [3d Dept 2006], quoting *Gladstone v Board of Educ. of City of N.Y.*, 49 Misc 2d 344, 346 [Sup Ct, Kings County 1966], *affd* 26 AD2d 838 [2d Dept 1966], *affd* 19 NY2d 1004 [1967], *cert denied* 389 US 976 [1967]; *Matter of Goldberg v Beame*, 22 AD2d 520, 522 [1st Dept 1965], *revd on other grounds* 18 NY2d 513 [1966]; *Beer v Board of Educ. of City of N.Y.*, 83

---

**2.** Although section 115 refers specifically to the "state," because the TA is a public benefit corporation whose defined purposes are for the benefit of the people of the State of New York, the appointment, promotion and continuance of employment of all TA employees is governed by the Civil Service Law (*see* Public Authorities Law §§ 1201 [1]; 1202 [2]; 1210 [2]).

NYS2d 485, 486 [Sup Ct, Kings County 1948] [interpreting former Civil Service Law § 37, and stating that it was "a mere statement of general policy applicable to all Civil Service employees"], *affd* 274 App Div 931 [2d Dept 1948]).

It is clear that section 115 is a preamble to Civil Service Law article VIII, and no private right of action flows from it. Article 14 of the Civil Service Law (the Taylor Law) provides the mechanism for represented employees to challenge alleged wage disparities between classifications.

The Appellate Division's reliance on *Bertoldi v State of New York* (275 AD2d 227 [1st Dept 2000], *lv denied* 96 NY2d 706 [2001]) for the proposition that section 115 creates a private right of action is misplaced. The *Bertoldi* court, in addressing the claimants' section 115 argument, pronounced that "[t]he principle of equal pay for equal work need not be applied in all cases under any and all circumstances" (*id.* at 228, citing *Matter of Shattenkirk v Finnerty*, 97 AD2d 51 [3d Dept 1983], *affd* 62 NY2d 949 [1984]). The Appellate Division majority in this case took that pronouncement to mean "that there are circumstances in which the principle of equal pay for equal work must be applied [under section 115] and that this [c]ourt has the power to apply it," although it acknowledged the dearth of reported case law where courts exercised such power (102 AD3d at 535).

██ However, contrary to the contention of the Appellate Division and the Union, the language employed in *Matter of Shattenkirk v Finnerty* and favorably cited in *Bertoldi* does not permit a court-sanctioned remedy pursuant to section 115. *Shattenkirk* involved a challenge to a "budget bulletin" that allegedly deprived the petitioner of an 8% salary increase while providing a similar increase to employees of a lesser grade, the bulletin's purpose being to ensure that lower-level employees did not earn salaries higher than their supervisors' salaries. The court, as part of an equal protection analysis, held that "in matters involving the State budget, equal protection does not require that all classifications be made with mathematical precision . . . [n]or does the principle of equal pay for equal work mandate that such principle must be applied in all cases under any and all conditions" (*Shattenkirk*, 97 AD2d at 57-58 [citation omitted]). While individual employees are not foreclosed from asserting violations of equal protection, section 115, which is at most a general policy of the state, does not provide a vehicle for such relief. The equal protection claims must be dismissed,

however, because the Union freely negotiated and executed the collective bargaining agreement that contained lower wage rates for SS-Is and, to the extent an equal protection claim can be raised, it must be asserted by the employees subjected to the alleged discriminatory conduct (*see e.g. Litman v Board of Educ. of City of N.Y.*, 170 AD2d 194 [1st Dept 1991]).

RIVERA, J. (concurring). I concur that the Appellate Division should be reversed and the certified question answered in the negative, and, for the reasons stated in the memorandum, I agree that petitioner Subway Surface Supervisors Association's (SSSA) claims under the Federal and State Equal Protection Clauses should be dismissed. However, I disagree with the reasons stated for dismissal of the Civil Service Law § 115 claim, and would instead dismiss that claim because SSSA failed to plead its entitlement to relief based on proper section 115 equal pay for equal work allegations. I write separately to present my analysis that section 115 sets forth a clear legislative mandate to ensure pay equality for state employees, guaranteed in part by a cognizable private cause of action that allows parties to challenge pay discrimination.

The action, as originally filed, alleged that respondent, the New York City Transit Authority (NYCTA), violated Civil Service Law § 61 (2) by assigning out-of-title work to employees represented by SSSA. According to SSSA's petition, the NYCTA employs two levels of Station Supervisors, Station Supervisor Level I (SS-I) and Station Supervisor Level II (SS-II). Further, SSSA represents the SS-I employees and nonparty Transit Supervisors Organization represents the SS-II employees. The NYCTA requires the same skills from employees at both levels, and they must pass the same competitive examination. However, SS-II employees make $14,000 more in annual base salary than SS-I employees under separate contracts negotiated by their respective unions. Although the respective functions and duties of SS-I and SS-II employees originally differed, SSSA's petition alleged that the NYCTA has shifted work from the SS-II employees to the SS-I employees since 2003. According to the petition, this shift has required SS-I employees to do work outside of their title.

The NYCTA moved to dismiss SSSA's petition, alleging that it was time-barred, subject to laches, and that it failed to establish subject matter jurisdiction or state a cause of action. In response, SSSA abandoned its section 61 challenge and changed its theory of liability, alleging that the wage disparity between

SS-I and SS-II employees violated the principle of equal pay for equal work embodied in Civil Service Law § 115 and the Federal and State Equal Protection Clauses.

The NYCTA replied that SSSA had improperly raised a section 115 claim for the first time in its opposition papers and that the claim lacked merit.[1] According to the NYCTA, Civil Service Law § 115 does not apply to the NYCTA's employment practices because the NYCTA is a public authority, not a state agency. Furthermore, according to the NYCTA, under Civil Service Law article 14 (the Taylor Law), the Public Employment Relations Board (PERB) had exclusive jurisdiction over any dispute arising out of the parties' collective bargaining, including a wage dispute.

In its supplemental affirmation in response to the NYCTA, SSSA asserted that the NYCTA was subject to the Civil Service Law by virtue of Public Authorities Law § 1210 (2), which expressly states that NYCTA employees are governed by the Civil Service Law. Supreme Court denied the NYCTA's motion to dismiss. The court acknowledged that the SSSA had abandoned its section 61 claim, but determined that the NYCTA had ample opportunity to respond to the SSSA's new grounds for relief. The court concluded that the NYCTA was subject to section 115 through section 1210 (2), and that there were questions of fact as to whether SS-I and SS-II employees performed the same duties. The court referred the matter to a special referee to address the factual issue and granted the NYCTA leave to appeal, which it did (2010 NY Slip Op 33912[U] [Sup Ct, NY County 2010]; 2011 NY Slip Op 30132[U] [Sup Ct, NY County 2011]).

In a 3-2 decision, the Appellate Division affirmed. The Court concluded that Civil Service Law § 115 applies to the NYCTA and "codifies a critical public policy," which Supreme Court had the authority to enforce (*Matter of Subway Surface Supervisors Assn. v New York City Tr. Auth.*, 102 AD3d 532, 534-535 [1st Dept 2013]). The Court also determined that SSSA's petition stated a valid equal protection claim (*id.* at 536).

The dissent rejected both contentions. According to the dissent, Civil Service Law § 115 applies to the NYCTA, but the

---

1. In its appeal to this Court, the NYCTA does not argue that Supreme Court erred, as a matter of law, when it reviewed SSSA's section 115 claim. In any event, Supreme Court properly exercised its authority under the CPLR to hear alternative theories of liability because doing so did not cause prejudice (*see Diemer v Diemer*, 8 NY2d 206, 210-212 [1960]).

statute "merely enunciates a policy as opposed to providing an enforceable statutory right" (*Matter of Subway Surface Supervisors Assn. v New York City Tr. Auth.*, 102 AD3d 532, 537 [1st Dept 2013, Abdus-Salaam, J., dissenting] [internal quotation marks omitted]). The dissent also found that SSSA had failed to state a claim under the Equal Protection Clauses. The dissent concluded that SSSA could not obtain a wage increase through the courts when it had failed to do so through collective bargaining with the NYCTA.

As a preliminary matter, I agree with the majority that the NYCTA is subject to the Civil Service Law (*see* majority mem at 1184 n 2). Public Authorities Law § 1210 (2) states:

> "The appointment, promotion and continuance of employment of all employees of the [New York City Transit Authority] shall be governed by the provisions of the civil service law and the rules of the municipal civil service commission of the city. Employees of any board, commission or department of the city may be transferred to positions of employment under the [New York City Transit Authority] in accordance with the provisions of the civil service law and shall be eligible for such transfer and appointment without examination to such positions of employment. Employees who have been appointed to positions in the service of the city under the rules of the municipal civil service commission of the city shall have the same status with respect thereto after transfer to positions of employment under the [New York City Transit Authority] as they had under their original appointments. Employees of the authority shall be subject to the provisions of the civil service law."

The plain language of the statute makes clear that the NYCTA's claim that it is beyond the reach of the law is without merit (*see Margolis v New York City Tr. Auth.*, 157 AD2d 238, 241-242 [1st Dept 1990]).

The NYCTA's argument that it is subject only to select provisions of the Civil Service Law fares no better. The NYCTA claims that section 115, and the entirety of Civil Service Law article VIII, apply only to "the nitty-gritty of the mechanics of managing . . . the *State's* civil service system (and not a public benefit corporation's personnel)." This argument cannot withstand scrutiny based on the plain language and clear purpose of

Public Authorities Law § 1210 (2), which subject the NYCTA to the entirety of the Civil Service Law, including section 115.

Turning to the NYCTA's arguments that Civil Service Law § 115 creates no private cause of action that may be asserted by the SSSA, the NYCTA concedes that this section requires employers to pay equal wages for equal work.[2] The provision reads specifically:

> "In order to attract unusual merit and ability to the service of the state of New York, to stimulate higher efficiency among the personnel, to provide skilled leadership in administrative departments, to reward merit and to insure to the people and the taxpayers of the state of New York the highest return in services for the necessary costs of government, it is hereby declared to be the policy of the state to provide equal pay for equal work, and regular increases in pay in proper proportion to increase of ability, increase of output and increase of equality of work demonstrated in service." (Civil Service Law § 115.)

The majority and the NYCTA argue, however, that this language enunciates only a policy, creating no rights which the courts are authorized to enforce. It is true that a preambular statement of policy set forth in a statute does not present a basis by which a court may enforce some amorphous right to relief. Where a statute lacks any guidance as to its implementation, or a policy statement is so general as to be aspirational, the statute lacks the appropriate clarity of intention and presents a judicially unenforceable statement (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 122).

That is not the case with section 115, which is more than preamble. Section 115 states the purpose and goals of the statute, namely "to attract unusual merit and ability to the service of the state of New York" and "to insure to the people and the taxpayers . . . the highest return in services." It also sets forth a requirement of "equal pay for equal work," which courts can interpret and apply in their review of state action. Enforcing

---

2. Any claim by the NYCTA that section 115 fails to require equal pay for equal work would be frivolous. In *Matter of Association of Secretaries to Justices of Supreme & Surrogate's Cts. in City of N.Y. v Office of Ct. Admin. of State of N.Y.* (75 NY2d 460 [1990]), we reviewed a dispute over the Classification Review Board's decision to reduce the pay grade of appellate clerks to that of trial clerks doing the same work. In approving the action, we held that section 115 "require[d] that the salary grades" be equivalent (*id.* at 476).

principles of equality within a legislative framework is a core judicial function, and one with which courts are well familiar. For example, courts have long enforced the various civil rights laws (*e.g.* Executive Law § 298; Administrative Code of City of NY § 8-125).

The cases upon which the majority and the NYCTA rely are not as clear as they contend. In *Beer v Board of Educ. of City of N.Y.* (83 NYS2d 485, 486-487 [Sup Ct, Kings County 1948]), the court declined to apply Civil Service Law § 37, the forerunner to section 115, in a situation where there was no "palpable discrimination or arbitrary action detrimental to [an] individual or class" (citations omitted). The necessary negative implication of such a statement is that a party may rely on the Civil Service Law to correct palpable discrimination that results in pay disparities. In *Beer*, the court weighed the desirability of respecting the administrative discretion of a state agency against the principle that a court may enforce the explicit policy of the State. The court concluded only that plaintiffs had not made out a case of invidious discrimination, not that a court cannot enforce the principle of equal pay for equal work when presented with such a case. This ambivalence persists throughout the reported cases, which have repeatedly recognized that section 115 "need not be applied in all cases under any and all circumstances" (*e.g. Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v State of N.Y. Unified Ct. Sys.*, 35 AD3d 1008, 1010 [3d Dept 2006]; *Bertoldi v State of New York*, 275 AD2d 227, 228 [1st Dept 2000]; *Matter of Shattenkirk v Finnerty*, 97 AD2d 51, 57-58 [3d Dept 1983]). That would obviously include cases in which no wage disparity exists given the nature and differences of the job duties at issue, but it would also include cases where the wage disparity could be justified by valid policy reasons.

Here, the NYCTA presents several reasons why this is the type of case to which section 115 has no application. It argues that section 115 does not apply because the SSSA negotiated these salaries and thus cannot now seek to avoid the consequences of its voluntary collective bargaining process. However, the collective bargaining process cannot insulate parties from the application of laws prohibiting disparity in wages because courts cannot enforce contracts, including collective bargaining contracts, that conflict directly with applicable law (*see e.g. Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington*, 30 NY2d 122, 129 [1972]).

The NYCTA also argues that PERB has exclusive jurisdiction over a union dispute. We have held in *Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y.* (44 NY2d 336, 343 [1978]) that PERB has authority to address unfair labor practices, but is not vested with "general power to prohibit governmental officials from violating express statutory provisions." Thus, where the expressed principle of equal pay for equal work has been violated, courts retain their authority to enforce the law.

Therefore, I cannot agree that the section 115 claim should be dismissed because section 115 fails to provide a private cause of action; for, as discussed, it surely does. However, the facts here suggest another reason why section 115 cannot provide relief to SSSA for the NYCTA's alleged wrongdoing. While the parties dispute whether the SS-I and SS-II employees really perform the same job for different pay, this case presents a situation in which SSSA contends that there is a rate of attrition in the SS-II position that results in the shifting of duties from SS-IIs to SS-Is. Thus, SSSA admits that any pay disparity arises from the needs of the workplace and not from any invidious discrimination. Accordingly, section 115 can provide no relief absent some other basis to find that the NYCTA violated the principle of equal pay.

In a suitable case, I would hold that a court may invoke section 115 to correct wage disparities that have no rational basis or result from arbitrary action (*see Matter of Tolub v Evans*, 58 NY2d 1, 8 [1982]; *Beer*, 83 NYS2d at 487). This case does not present such a situation. Therefore, I concur in the result.

Judges GRAFFEO, READ, SMITH and PIGOTT concur; Judge RIVERA concurs in result in an opinion in which Chief Judge LIPPMAN concurs; Judge ABDUS-SALAAM taking no part.

Order reversed, with costs, appellant's motion to dismiss the petition granted, petition dismissed, and certified question answered in the negative, in a memorandum.